BEVERLY ANN ROBINSON, by her next friend, BETTY ROBINSON, v. LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE.

(Filed 22 November, 1961.)

**1. Evidence § 45—**

While the amount of alcohol in the bloodstream as shown by proper chemical tests is competent in evidence on the question of intoxication, proper foundation for such evidence must be laid by showing that the blood was taken from the person in question within a reasonable time of the incident under investigation, by indentifying the blood specimen from the time it was taken to the time of the analysis, and by establishing the qualifications of the person making the analysis as an expert in the field, and further, if the specimen was taken from the body of a decedent, that it was taken before any extraneous substance had been injected into the body.

**2. Same—**

Testimony of a witness that he obtained a sample of the blood of the

decedent and that an analysis of the blood was made under his supervision and that the result of the tests were in his report, is properly striken and the report properly excluded from evidence when there is no evidence as to how long after the death of the decedent the blood was taken from his body, or who took the specimen of blood and, if actually taken from the body of decedent, whether it was taken before or after any extraneous substance had been injected into the body.

**3. Evidence § 24; Public Officers § 8—**

The presumption of regularity of the official act of a public officer obtains as to transactions done by him or before him under his direction, but not as to transactions done out of his presence, and thus the record or certificate of a public officer as to transactions occurring out of his presence are generally inadmissible.

**4. Same; Coroners; Evidence § 45—**

The report of the coroner as to the alcohol content of a blood specimen purportedly taken from the body of decedent is incompetent when the coroner testifies that he could not remember whether the specimen was taken from the body while he was present and there is no evidence as to the manner in which the specimen was handled after it was taken or as to who took the sample of blood.

**5. Coroners; Evidence § 24—**

G.S. 8-35 has no application to an uncertified copy of a coroner's report but only to a duly certified copy.

APPEAL by defendant from *Sink, Emergency Judge,* May 8, 1961, "A" Civil Term of MECKLENBURG.

This is a civil action to recover of the defendant the sum of $1,000 pursuant to the provisions of an insurance policy issued by it.

The parties at the trial below, through their counsel, stipulated in open court as follows:

"1. That the plaintiff, Beverly Ann Robinson, was a minor and that Betty Robinson was duly appointed her next friend.

"2. That the defendant is a corporation duly authorized to engage in the insurance business in the State of North Carolina.

"3. That on or about February 19, 1959, the defendant issued to one William F. Ardrey, as a member of Nationwide Motorist Association, an accident insurance certificate number 659 which provided, among other things, that if the said William F. Ardrey, insured, 'loses his life as a result of a collision or other accident to any automobile * * *, inside of which the insured is riding or driving on a public highway,' the defendant would pay the beneficiary of said policy the sum of $1,000.

"4. That the minor plaintiff is the beneficiary of said policy or certificate.

"5. That the insured, William F. Ardrey, died as a result of a col-

lision which occurred on July 18, 1959, when he was driving his automobile on a public road in Mecklenburg County, North Carolina.

"6. That at the time of the death of William F. Ardrey all premiums of the defendant's certificate or policy had been paid up to and including July 18, 1959.

"7. That the plaintiff made due proof of the death of the insured and performed all other conditions required of a beneficiary by said policy or certificate.

"8. The defendant's said policy or certificate contains the following language:

'EXCLUSIONS AND LIMITATIONS. 1. This insurance does not cover the Insured: (c) for loss fatal or otherwise suffered while intoxicated or under the influence of or while affected by or resulting directly or indirectly from intoxicants or narcotics used by the Insured.' "

Following the entry of the above stipulations, the court ruled that a *prima facie* case for the plaintiff had been made out. The court further held that since the defendant's sole defense was the policy exclusion (set forth in stipulation #8 above), that this was an affirmative defense upon which the defendant had the burden of proof.

Defendant offered Dr. W. M. Summerville as a medical expert. It was stipulated that Dr. Summerville was a medical expert, specializing in the field of clinical pathology, and that he was also Coroner of Mecklenburg County. The witness testified that he knew how to make a chemical analysis of human blood so as to determine alcoholic content, and also that he was familiar with the effects certain percentages of alcohol in the blood stream had upon a person; that on or about 18 July 1959, he obtained a sample of the blood of William F. Ardrey; that an analysis of this blood was made under his supervision; and that the results of that test were in his report.

At this point, counsel for plaintiff moved to strike all of the testimony of Dr. Summerville because the defendant had not laid a proper foundation for the questions submitted to the witness. The court held that counsel for plaintiff might cross-examine the witness about the previous testimony in the absence of the jury. The jury was excused, and the following cross-examination occurred: "To the best of my knowledge I was in the funeral home when the blood was taken. To the best of my knowledge I saw the blood taken myself although it is not incorporated in my report. * * * No sir, I would not remember if I were present. * * * I see about 450 a year * * *. I cannot say that I was present. * * * I obtained blood in the manner that I said, but I am not certain about it. * * *"

Following this cross-examination, the defendant offered in evidence

a paper identified by Dr. Summerville as a copy of his report as Coroner of the death of William F. Ardrey. The pertinent parts of this report stated: "Blood was obtained for alcohol determination. * * * The test for blood alcohol revealed a concentration of 0.3%." Plaintiff's objection to the introduction of this report in evidence was sustained, and defendant excepted. Also, the court sustained plaintiff's motion to strike the evidence of Dr. Summerville relative to the procurement of blood purported to have been taken from the body of William F. Ardrey, the decedent, and the result of the test thereof. Plaintiff's objections to subsequent testimony of Dr. Summerville as to the effect of the percentage of alcohol in the blood as shown in the report were also sustained.

Thereafter the jury returned. Defendant offered additional evidence. At the close of all the evidence, appropriate issues were submitted to the jury and answered in favor of the plaintiff.

The defendant appeals, assigning error.

*W. B. Nivens for plaintiff appellee.*
*Dockery, Ruff, Perry, Bond & Cobb for defendant appellant.*

DENNY, J. The defendant's first assignment of error is based on its exception to the refusal of the court in the trial below to allow the defendant to introduce in evidence the paper identified by Dr. Summerville as a copy of his report as Coroner filed with the Clerk of the Superior Court of Mecklenburg County.

It is well settled in this jurisdiction that the effect of alcohol in the blood stream as shown by proper chemical tests is competent evidence on the question of intoxication. *Osborne v. Ice Co.,* 249 N.C. 387, 106 S.E. 2d 573; *S. v. Moore,* 245 N.C. 158, 95 S.E. 2d 548; *S. v. Willard,* 241 N.C. 259, 84 S.E. 2d 899. See also Anno. — Intoxication — Scientific Tests, 159 A.L.R. 209, *et seq.;* Anno. — Evidence — Specimen From Human Body, 21 A.L.R. 2d 1219, *et seq.*

However, as to whether or not a blood alcohol test is admissible depends upon a showing of compliance with conditions as to relevancy in point of time, tracing and identification of specimen, accuracy of analysis, and qualification of the witness as an expert in the field. In other words, a foundation must be laid before this type of evidence is admissible. *S. v. Willard,* supra. Moreover, it should be made to appear that the blood was taken from the body of the deceased before any extraneous matter had been injected into it. *McGowan v. City of Los Angeles,* 100 Cal. App. 2d 386, 223 P. 2d 862, 21 A.L.R. 2d 1206.

The evidence introduced at the trial below does not show how long after the death of the insured the blood was taken from the body or

who took the blood from the body, and, if actually taken from the body of William F. Ardrey, whether it was taken before or after any extraneous substance had been injected into the body.

McCormick on the Law of Evidence, section 176, page 377, in discussing chemical tests to determine the degree of intoxication, says: "The party offering the results of any of these chemical tests must first lay a foundation by producing expert witnesses who will explain the way in which the test is conducted, attest its scientific reliability, and vouch for its correct administration in the particular case."

In *McGowan v. City of Los Angeles, supra,* the Court considered the identical question now before us. Section 1920 of the Code of Civil Procedure of California reads: "Entries in public or other official books or records, made in the performance of his duty by a public officer of this state, or by another person in the performance of a duty specially enjoined by law, are prima facie evidence of facts stated therein." In light of the provisions of this statute, the Court said: "If it had been proved that the blood analyzed by the county coroner's office had been taken from the body of Cox before any extraneous matter had been injected into his body, the coroner's record of the analysis would have been admissible and prima facie evidence of the facts therein stated." The Court quoted with approval from Wigmore on Evidence, pp. 530, 531, as follows: " 'Where the officer's statement is concerned with a *transaction* done, not by him or before him, but *out of his presence* (and out of the presence of his subordinates), the case is one in which obviously he can have no personal knowledge; the assumption must therefore be that his statement is inadmissible. It is to be noted, however, that the sufficient explanation is usually that the officer's duty does not extend to transactions out of his presence, and thus the recording or certifying of them is not covered by his official duty. * * * Thus, for matters not occurring in the presence of the officer, his record or certificate is inadmissible, not only because in general a witness must have personal knowledge, but also because an officer's duty is usually concerned only with matters done by or before him.' " The Court further stated: "There was no evidence that any blood was ever taken from the body of Cox, or, if any was taken, the identity of the person who took it or when it was taken — whether before or after embalming fluid which contains alcohol was injected into the body — how, when, and the identity of the person by whom the container was labeled, or who delivered the bottle to the coroner's office, or that the blood analyzed was that of Cox. Neither the label nor the bottle was identified, offered or received in evidence. No excuse, explanation or justification was given for fail-

ure to lay the necessary foundation. The court did not err in refusing to admit the paper in evidence."

In the instant case, the Coroner's testimony left the question in doubt as to whether he was or was not present when the blood was supposed to have been taken from the body of William F. Ardrey. In fact, he positively stated that he could not remember whether he was present or not. "I cannot say that I was present." Furthermore, there is no evidence tending to show who took the sample of blood from the body of the insured, or as to whether or not it was taken before or after embalming fluid had been injected into his body. Likewise, there was no evidence as to the manner in which the blood was handled after it was taken, if actually taken, from the body of the insured.

In the case of *Benton v. Pellum*, 232 S.C. 26, 100 S.E. 2d 534, the chemist at the Medical College in charge of running blood tests, testified that he received two blood specimens bearing the names of the appellant and another party; that he unwrapped the package and alcohol tests were run on both specimens; that his only knowledge as to whose blood was being tested was from the label on the bottle. The testimony as to the result of the test run on the specimen bearing the name of the appellant was rejected. The Court said: "(I)t is generally held that the party offering such specimen is required to establish, at least as far as practicable, a complete chain of evidence, tracing possession from the time the specimen is taken from the human body to the final custodian by whom it is analyzed. *Joyner v. Utterback*, 196 Iowa 1040, 195 N.W. 594. As stated in *Rodgers v. Commonwealth*, 197 Va. 527, 90 S.E. 2d 257, 260, 'Where the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis.'"

The appellant contends that the Coroner's report was admissible under the provisions of G.S. 8-35, the pertinent parts of which provide: "All copies * * * from the books or papers on file, or records of any public office of the State or the United States * * * shall be received in evidence and entitled to full faith and credit in any of the courts of this State when certified to by the chief officer or agent in charge of such public office * * * to be true copies, and authenticated under the seal of the office * * * concerned. Any such certificate shall be prima facie evidence of the genuineness of such certificate * * *, the truth of the statements made in such certificate, and the official character of the person by which it purports to have been executed." This contention of the appellant is without merit.

The appellant did not offer a certified copy of the report sought to be introduced in evidence pursuant to the requirements of the

statute. Therefore, in view of the equivocal nature of the evidence with respect to the identity of the blood tested, we hold that the court below properly refused to admit the uncertified copy of the Coroner's report in evidence.

In view of the conclusion we have reached with respect to the exclusion of the purported copy of the Coroner's report, we deem it unnecessary to discuss the remaining assignments of error.

In the trial below, we find.

No error.