KENNETH W. BREWER, ADMINISTRATOR OF THE ESTATE OF FARRELL L. BREWER v. WILLIAM P. HARRIS, ADMINISTRATOR OF THE ESTATE OF GARY RUDISILL

No. 7118SC14

(Filed 24 February 1971)

1. Automobiles §§ 91, 94; Negligence § 7— death of automobile passenger — wilful or wanton negligence of driver

In an action for the wrongful death of a passenger in an automobile which failed to negotiate a curve, the trial court erred in refusing to submit plaintiff's tendered issue as to the wilful and wanton conduct of the driver of the automobile where plaintiff's evidence tended to show that, despite warnings by the two passengers in the automobile to slow down for the approaching curve, the driver failed to slow down and entered the curve at a speed well over 100 mph, and that the driver had a blood alcohol content of .31 percent.

2. Evidence § 51— blood alcohol test result

In an action for the wrongful death of a passenger in an automobile which failed to negotiate a curve, the trial court properly admitted

evidence of blood alcohol tests performed on plaintiff's intestate and the automobile driver.

Judge BROCK dissents.

APPEAL by plaintiff from *Collier, Superior Court Judge,* 18 May 1970 Session, GUILFORD Superior Court (High Point Division).

This case arises from an automobile accident which occurred on 15 September 1968 in High Point, North Carolina, in which plaintiff's intestate, Farrell L. Brewer, was killed while riding in a 1968 Corvette automobile operated by defendant's intestate, Gary Rudisill. Issues as to the negligence of the defendant and contributory negligence of plaintiff were answered in the affirmative and plaintiff appealed.

*Haworth, Riggs, Kuhn and Haworth by John Haworth for plaintiff appellant.*

*Perry C. Henson and Daniel W. Donahue for defendant appellee.*

VAUGHN, Judge.

[1] The defendant stipulated that in the event the jury found that Rudisill was the driver of the Corvette at the time of the accident, they should answer the first issue as to his negligence in the affirmative. In apt time plaintiff tendered an issue as to the wilful and wanton conduct of Rudisill. Plaintiff assigns as error the refusal of the trial judge to submit the issue. The evidence, when considered in the light most favorable to the plaintiff, tends to show, among other things, the following: On 15 September 1968 at about 1:30 a.m. Rudisill was driving his 1968 Corvette in a northerly direction along South Main Street in High Point. The automobile was a sports car and contained only two seats. One Danny W. Carroll was in the right seat and Brewer was seated on the console located between the two seats. After stopping at the intersection of South Main Street and Fairfield Road, Rudisill suddenly depressed the gas pedal all the way to the floorboard and attained a speed of more than 100 miles per hour. The vehicle was approaching a curve near the intersection of South Main Street and Fraley Road. Brewer and Carroll each told Rudisill to slow down or he would not make the curve. Rudisill made no response, did not slow down

and entered the curve at a speed of well over 100 miles per hour. The vehicle left the street, struck two utility poles, finally returned to the street and struck a vehicle head-on in the southbound lane of South Main Street. The investigating officer was asked to describe the marks found on the highway scene of the accident and testified, in part, as follows:

> "Describing the marks that I found on the highway, the first marks I found were south of Fraley Road which in my opinion appear to be black pressure marks going into the northbound lane of travel. At this point, approximately 108 feet south of Fraley Road, these marks traveled up the west side of the highway or the southbound lane, crossed the intersection of Fraley Road up on the edge of a small traffic island in front of a business. The sliding or pressure marks continued on to another traffic island in front of the same building and at this point there was a utility pole severed from its post. This pole was 150 feet from the intersection of Fraley Road or 268 feet from where the pressure marks first began.

> "The marks continued on from the pole 124 feet to a second pole which was damaged. At this point the marks took another direction back in a northeasterly direction or back towards the highway and there was 70 feet from this pole to the back of the Corvette in the street. The total of those tire impressions was 474 feet, or that is the distance from the marks from the road to the car."

Brewer and Rudisill were killed. Blood samples taken immediately after the accident disclosed that Rudisill was highly intoxicated, his blood having an alcoholic content of .31 percent. The sample of Brewer's blood had an alcoholic content of .11 percent.

Our decision on this assignment of error is, we think, controlled by the opinion of the Supreme Court in *Pearce v. Barham*, 271 N.C. 285, 156 S.E. 2d 290, where we find the following:

> "There was evidence which, when considered in the light most favorable to plaintiff tends to show: On February 19, 1964, near midnight, Calvin W. Barham (Calvin), was driving his Ford car in a northeasterly direction along Rural Paved Road No. 2224. Plaintiff, seated to Calvin's right, and Dolly Barham (Dolly), seated to plaintiff's

right, were passengers. As he approached Fowler's Cross-roads, the intersection of No. 2224 with Rural Paved Road No. 2308, Calvin was driving in a drizzling rain, with slick tires, upgrade, at a speed of ninety miles an hour 'or better,' moving back and forth across the road; and, although confronted by the stop sign at that intersection, failed to stop or slow down, crossed the intersection at such speed and lost control. As a result, his car left the road and overturned in a field some 288 feet from where it left the road, killing the driver and injuring the passengers. There was evidence sufficient to support a finding that Calvin's conduct was both wilful and wanton."

We are unable to say that the evidence in the present case is less indicative of wilful and wanton conduct on the part of Rudisill than it was on the part of Barham in *Pearce v. Barham, supra;* we must hold, therefore, that it was error for the trial judge to decline to submit the issue.

We have not discussed the denial of plaintiff's motion to amend his complaint. Under Rule 8 of the North Carolina Rules of Civil Procedure, the original complaint was sufficient to have entitled plaintiff to offer evidence of defendant's wilful and wanton conduct and to have that issue submitted to the jury.

[2]   Evidence as to results of the blood tests of Rudisill and Brewer was admitted into evidence over plaintiff's objection and this is assigned as error by plaintiff. We hold that the evidence was properly admitted, the requirements of *Robinson v. Ins. Co.,* 255 N.C. 669, 122 S.E. 2d 801 having been met.

Since there must be a new trial, we will refrain from further discussion of the case except to say that evidence of Brewer's contributory negligence was plenary.

New trial.

Judge MORRIS concurs.

Judge BROCK dissents.