FCX, INC. v. ROBERT H. CAUDILL, JR., INDIVIDUALLY AND ELSIE MAE CAUDILL, D/B/A CAUDILL'S DAIRY, INC.

No. 8610SC1094

(Filed 21 April 1987)

**Evidence § 34.3— letter not admission by adoption or silence**
      In an action involving the issue of whether feed corn purchased from plaintiff was contaminated by fertilizer, a letter from a dairy nutrition counselor stating that fertilizer did not appear to be present in samples sent to him for analysis did not qualify as an admission by adoption because defendant solicited the information and retained the letter in his records without objecting to its contents where there was no evidence that defendant used or relied upon the information contained in the letter in any manner suggesting that he believed it was true. Nor was the letter competent as an admission by silence where there was no evidence of defendant's response or lack thereof upon receipt of the letter and a denial could not reasonably be expected under the circumstances. N.C.G.S. 8C-1, Rule 801(d).

APPEAL by defendants from *Brannon, Judge.* Judgment entered 7 March 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 11 March 1987.

*Moore, Ragsdale, Liggett, Ray & Foley, P.A., by Albert D. Barnes, for plaintiff appellee.*

*Blanchard, Tucker, Twiggs & Abrams, P.A., by Charles F. Blanchard and Irvin B. Tucker, Jr., and Brown, Brown, Brown and Stokes, by R. Lane Brown, III, for defendant appellants.*

BECTON, Judge.

Plaintiff FCX, Inc., instituted this action seeking to recover from defendants, Robert Caudill, Elsie Mae Caudill, and Caudill's Dairy, Inc., $59,984.75 for the balance due on an indebtedness which arose out of the sale of various merchandise, including cattle feed, to the dairy and which was personally guaranteed by the individual defendants. The defendants counterclaimed for negligence and for breach of express and implied warranties, alleging that 45,000 pounds of shelled feed corn delivered to the dairy by FCX was deficient as to grade and quality and was contaminated with fertilizer, a toxic chemical, and with toxic weed seed, which, when consumed by the Caudills' dairy cattle, caused illness and death of many of the cows.

At the conclusion of all the evidence, the trial court directed a verdict for FCX on its contract claim against the Caudills, ordering the payment of $59,984.75 with interest. The Caudills do not appeal the entry of the directed verdict. The negligence and breach of warranty issues raised by the Caudills' counterclaims were submitted to the jury which returned a verdict in favor of FCX.

On 7 March 1986, the Court denied the Caudills' motion for a new trial and entered judgment on the verdict in favor of plaintiff FCX. From that judgment the Caudills appeal, contending that the trial court committed reversible error by admitting in evidence a letter designated Plaintiff's Exhibit 7. We hold that the letter was improperly admitted, and therefore we reverse.

I

Caudill's Dairy, located in Star, North Carolina, is owned and operated by defendant Elsie Mae Caudill and her three sons, one

of whom is defendant Robert Caudill. On 13 April 1983, FCX responded to an urgent order for feed from Caudill's Dairy by delivering a 45,000 pound load of yellow shelled corn. The corn was delivered to the dairy by Gaston Vance Bass, a driver for FCX, in a Killebrew trailer used by FCX for the transportation of fertilizer and feed grains. The corn was first fed to the dairy cows the same afternoon. Thereafter, many cows became ill, at least one died, and a large number of calves were allegedly aborted or stillborn.

The primary issue at trial was whether the corn supplied by FCX contained contaminants which caused the problems with the dairy herd. In support of their counterclaims, the Caudills presented evidence that, on the two days immediately preceding the corn delivery to the dairy, the same Killebrew trailer was used to haul two loads of fertilizer. On the other hand, Mr. Bass, the truck driver, testified on behalf of FCX that prior to the loading of the corn in question, he drove the trailer over 100 miles with the bottom gates open and that the trailer had been washed thoroughly. Other FCX employees testified that the corn was tested for aflatoxin and moisture content after loading, that Robert Caudill and other dairy workers were present during the unloading and made no complaints about the condition of the corn at that time, and that no complaints were received from other customers of FCX who received corn from the same storage bin.

The bulk of the evidence at trial consisted of testimony by expert witnesses for both sides and various reports of the results of laboratory analyses of samples of the corn and of tissue and blood from some of the cows. Dr. Leroy Taul, Caudill Dairy's regular veterinarian, testified on behalf of the Caudills that he was first summoned to the dairy on 15 April 1983 at which time he observed several cows with severe diarrhea and other symptoms. On 17 April, Dr. Taul's associate, Dr. Perry Parks, responded to another call from the dairy. Upon learning that the sick animals had been fed from a new load of corn from FCX, he collected samples of the feed for laboratory analysis and conducted an autopsy of a dead cow, removing organ tissue for analysis. On 19 April, Dr. Taul again visited the dairy and observed that a large portion of the milking herd was affected although none of a number of "dry" cows, which were separated from the milk herd only by a wire fence and were not given the same feed, exhibited

any signs of illness. Based upon their observations of the herd and of granular matter in the feed, upon various laboratory reports, and upon their knowledge of the manner of the corn's delivery, both Dr. Taul and Dr. Parks concluded that the problems with the herd were due to poisoning from contaminants — probably fertilizer — in the feed corn obtained from FCX.

The Caudills also introduced the testimony of Dr. Cecil F. Browne, an expert in animal toxicology and veterinary science, who stated that he had visited the dairy, had talked with Dr. Taul and Dr. Parks, and had examined laboratory reports on the analysis of samples of the corn and mixed feed performed by Woodson-Tenent Laboratories. Based on that information, Dr. Browne was of the opinion that the sickness and death of the cows were due to a reaction between several toxic chemical substances present in the feed which came from fertilizer mixed with the FCX corn.

In rebuttal, FCX offered the testimony of two experts, Dr. Arthur L. Aronson and Dr. Ben D. Harrington, which indicated that the trace levels of substances found in the corn by Woodson-Tenent Laboratories were insufficient to harm the dairy cattle; that the symptoms normally associated with poisoning by organophosphates were not present in the Caudill herd; and that all tests performed on affected cows, cow tissue, feed and corn were negative for poisoning by any substance. Finally, Richard S. Kern, a salesman for MoorMan Manufacturing Company of mineral feed supplements which were mixed with the corn to produce the feed given to the Caudills' cows, testified that he had assisted David Caudill in gathering a sample of the feed which he mailed to the MoorMan Laboratory in Quincy, Illinois for analysis. In response, Kern received a letter or report from Gary Goodall, a dairy nutrition counselor at MoorMan. A portion of that letter, designated Plaintiff's Exhibit 7, was admitted in evidence over the objection of counsel for the Caudills, and stated, following the recitation of percentages of various substances found in the sample: "We have noted that none of the minerals in the sample appear to be fertilizer."

Prior to receiving the letter in evidence, the court excused the jury and held a *voir dire* of the witness, Richard Kern. The foundation established for the exhibit's admissibility is substan-

tially as follows. Kern had sent other samples to the MoorMan laboratory in the past and had communicated with Gary Goodall on previous occasions by telephone and by mail. On this particular occasion, Kern called Goodall prior to sending the Caudills' feed sample, and sent it by way of the U.S. Mail. Kern further testified that he gathered the sample and sent it for testing at Robert Caudill's request. Upon receipt of the letter, which was written on MoorMan letterhead and addressed to Kern, Kern delivered it to Robert Caudill. A brief discussion followed, but Kern did not recall specifically what was said or done upon delivery of the letter.

## II

The sole issue on appeal is whether the trial court erred by allowing in evidence the letter from Gary Goodall to Richard Kern.

## A

Initially, we summarize some of the various factors which we must consider when determining the admissibility of this type of evidence. First, every writing sought to be admitted must be properly authenticated, *see* Rule 901, North Carolina Rules of Evidence, and must satisfy the requirements of the "best evidence rule," Rule 1002, or one of its exceptions set forth in Rules 1003 *et seq.* Furthermore, if offered for a hearsay purpose, the writing must fall within one or more of the exceptions to the hearsay rule established by Rules 803 and 804.

Whenever, as in the present case, the writing in question contains the results of scientific analysis of real evidence, further considerations also arise. It is normally necessary to lay a foundation for the scientific evidence by way of expert testimony explaining the way the test is conducted, attesting its scientific reliability, and vouching for its correct administration in the particular case. *See Robinson v. Life and Casualty Insurance Co.*, 255 N.C. 669, 122 S.E. 2d 801 (1961). In addition, the substance analyzed must be accurately identified. If by its nature it is not readily identifiable or is susceptible to alteration by contamination or tampering, it may be necessary to prove a chain of custody to insure that the substance came from the source claimed and that its condition was unchanged. *See id.*; McCormick on Evidence Sec.

212 at 667-68 (E. Cleary 3d ed. 1984); Brandis on North Carolina Evidence Sec. 117, n.2 (2d ed. 1982). A sample drawn from a larger mass must be shown to be accurately representative of the mass. McCormick Sec. 212 at 668. Failure to satisfy any of these requirements may, in a particular case, amount to a failure to establish the relevancy of the test results.

B

Based on the testimony of Mr. Kern, the trial judge concluded that the letter was admissible on the theory that it constituted an admission by adoption or by silence of a party, Robert Caudill. The Caudills argue that the letter was improperly admitted because (1) the plaintiff failed to lay a proper foundation for the test results by way of expert testimony establishing their scientific reliability, (2) the plaintiff failed to establish the identity of the feed samples analyzed by tracing a chain of custody, and (3) the exhibit is not an implied or adopted admission of Robert Caudill.

We agree that there is no evidence by any witness, expert or otherwise, explaining how the test was conducted or vouching for its reliability, appropriateness, or correct administration. Neither the qualifications of the declarant, Mr. Goodall, nor the source of the information and conclusions related by him have been demonstrated. Moreover, there is insufficient evidence of a chain of possession, transportation, and safekeeping of the feed samples to establish the likelihood that the samples collected by Mr. Kern are the same as those to which the test results in the letter refer. *See State v. Britt,* 291 N.C. 528, 231 S.E. 2d 644 (1977).

The trial judge apparently was of the opinion that, as an admission of a party opponent, the letter did not have to satisfy the foregoing relevancy or reliability requirements and that the deficiencies discussed were thus not fatal. We need not decide to what extent, if any, the foundation requirements for scientific evidence are necessary for statements which fall within the admissions exception to the hearsay rule. For reasons discussed hereafter, we conclude that the evidence in this case falls far short of establishing any acquiescence in or adoption of the statements contained in the challenged writing by the Caudills so as to qualify the letter as an admission. The letter was plainly offered for the truth of its contents, i.e., that there was no fertilizer in the sample, and therefore constituted inadmissible hearsay.

## C

An admission may be express or may be implied from conduct. Rule 801 of the North Carolina Rules of Evidence states in relevant part:

> (d) Exception for Admissions by a Party-Opponent. A statement is admissible as an exception to the hearsay rule if it is offered against a party and it is . . . (B) a statement of which he has manifested his adoption or belief in its truth
> . . . .

The Commentary following the rule quotes from the Advisory Committee's note as follows:

> Under established principles an admission may be made by adopting or acquiescing in the statement of another. . . . Adoption or acquiescence may be manifested in any appropriate manner. . . .

A person may expressly adopt another's statement as his own, or an adoptive admission may be implied from "other conduct of a party which manifests circumstantially the party's assent to the truth of a statement made by another person." McCormick, Sec. 269 at 797. From our review of relevant authority, it appears that adoptive admissions fall generally into two categories—those implied from an affirmative act of a party, and those implied from silence or a failure to respond in circumstances that call for a response. FCX argues that evidence Robert Caudill solicited the information, received the report from Kern, and retained it in his records without objecting to its contents establishes an adoption. We disagree.

The first type of adoption ordinarily requires some affirmative act by which the party relies upon or makes use of the statement of another for his own benefit or otherwise indicates that he believes it is true. *See, e.g., Pekelis v. Transcontinental and Western Air, Inc.*, 187 F. 2d 122 (2d Cir. 1951) (defendant used report of accident investigating board as a basis for remedial measures); *United States v. Morgan*, 581 F. 2d 933 (D.C. Cir. 1978) (Assistant U.S. Attorney held to have adopted statements of informant characterized by him as "reliable" which were used for purpose of obtaining a warrant); *see also* McCormick, Sec. 269. In

our view, mere possession of a written statement does not manifest an adoption of its contents. Nor does a request for testing or for other information automatically establish an adoption of statements contained within the response. There is no evidence that Robert Caudill used or relied upon the information contained in the letter in any manner suggesting that he believed it was true. To the contrary, the evidence shows that the letter was generated during an ongoing investigation in which Caudill was seeking opinions from more than one source as to the cause of the dairy cows' sickness, and that his suspicion that the feed was contaminated with fertilizer was not eliminated by receipt of the letter. We thus conclude that no affirmative conduct of Robert Caudill may be reasonably construed as manifesting an adoption of the statements in the letter as his own.

Likewise, the evidence does not support the finding of an admission implied from silence. Regarding admissions by silence, our Supreme Court stated in *State v. Spaulding*, 288 N.C. 397, 219 S.E. 2d 178 (1975):

> Implied admissions are received with great caution. However, if the statement is made in a person's presence by a person having first hand knowledge under such circumstances that a denial would be naturally expected if the statement was untrue and it is shown that he was in a position to hear and understand what was said and had the opportunity to speak, then his silence or failure to deny renders the statement admissible against him as an implied admission.

*Id.* at 406, 219 S.E. 2d at 184; *State v. Whitley*, 58 N.C. App. 539, 541, 293 S.E. 2d 838, 839, *disc. rev. denied and appeal dismissed*, 306 N.C. 750, 295 S.E. 2d 763 (1982). Similarly,

> [i]f a written statement is handed to a party and read by him, in the presence of others, his failure to deny assertions contained therein, when under the circumstances it would be natural for him to deny them if he did not acquiesce, may be received as an admission. . . .

McCormick, Sec. 270 at 801. Whether the statement is oral or written, the critical inquiry is whether a reasonable person would have denied it under the circumstances.

In the present case, there is no evidence of Robert Caudill's response or lack thereof upon receipt of the letter from Kern. Kern testified that he could not recall what was said or done at the time. Moreover, even if Caudill in fact failed to deny the letter's assertions, a denial could not reasonably be expected under the circumstances. Neither Robert Caudill nor Richard Kern knew personally whether the sample contained fertilizer but were merely trying to find out. The letter itself did not invite a reply. Nor was the nature of Caudill's relationship with MoorMan Company such as to make it probable that Caudill would have responded to the company with a denial if he questioned the test results. Under these circumstances, it may not be reasonably inferred that Robert Caudill acquiesced in any statements in the letter.

For the foregoing reasons, we conclude that the letter was not admissible as an admission by adoption or silence.

### D

FCX argues that the letter was also admissible under Rule 801(d)(D) as "a statement made by [a party's] agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." We summarily reject this contention as we find no evidence of any agency relationship between Robert Caudill and Gary Goodall or MoorMan Manufacturing Company.

### III

FCX further argues that, even if the admission of the letter was error, it was harmless error. The burden is on the appellant not only to show error but also to show that the error was prejudicial and probably influenced the jury verdict. *See, e.g., Hasty v. Turner*, 53 N.C. App. 746, 281 S.E. 2d 728 (1981); *Emerson v. Carras*, 33 N.C. App. 91, 234 S.E. 2d 642 (1977).

In this case, the letter's erroneous admission was unquestionably material since the evidence bore directly upon a central issue in dispute — whether the corn received from FCX contained fertilizer. The letter, clothed with an aura of authenticity, purported to report results of scientific analysis. In a case involving a battle of experts and conflicting interpretations of various laboratory reports, we believe there exists a substantial probabili-

ty that the admission of this evidence in the final stage of the trial prejudicially influenced the outcome.

The admission in evidence of the letter designated Plaintiff's Exhibit 7 constituted prejudicial error requiring reversal of the judgment.

Reversed.

Chief Judge HEDRICK and Judge WELLS concur.