CALVIN JOHNSON, Plaintiff-Employee v. CHARLES KECK LOGGING, Defendant-Employer and SELF-INSURED NORTH CAROLINA FORESTRY ASSOCIATION, Defendant-Insurance Carrier

No. COA94-1034

(Filed 20 February 1996)

**Workers' Compensation § 129 (NCI4th)— intoxication of employee—unreliability of blood alcohol test—conclusions unsupported by evidence**

Where there was insufficient evidence to establish that a blood alcohol analysis was scientifically reliable or that it was correctly administered in compliance with conditions as to relevancy in point of time, tracing and identification of specimen, and accuracy of analysis, the blood alcohol test was incompetent evidence of plaintiff's intoxication; therefore, where there was no other evidence of plaintiff's intoxication, the Industrial Commission erred in concluding that plaintiff's injury was proximately caused by his intoxication and in denying his workers' compensation claim. N.C.G.S. § 97-12(1).

**Am Jur 2d, Workers' Compensation § 256.**

Appeal by plaintiff from an Industrial Commission decision entered 23 May 1994. Heard in the Court of Appeals 24 May 1995.

*Alexander Dawson, P.A., by Alexander Dawson, for plaintiff-appellant.*

*Brooks, Stevens & Pope, P.A., by F. Stephen Glass and Susan M. Hunt, for defendant-appellants.*

McGEE, Judge.

For most of plaintiff Calvin Johnson's adult life, he worked as a "limber/topper" (topper) cutting the limbs and tops off trees already cut down by a "stumper." On Monday, 11 June 1990 at approximately 11:00 a.m., plaintiff was working as a topper for defendant, Charles Keck Logging, when he was injured by a partially-cut tree blowing over on him. Plaintiff was taken to the emergency room at Halifax-South Boston Community Hospital (Community Hospital) where a physical examination and various tests were conducted to determine plaintiff's condition. One test administered was a blood alcohol analysis performed on a blood sample allegedly collected from plaintiff at

approximately 1:24 p.m. The blood test results showed the blood alcohol content of plaintiff's blood was .11.

A deputy commissioner of the N.C. Industrial Commission held a hearing on plaintiff's request for benefits on 9 September 1991. The evidence included the results of plaintiff's blood test, which were admitted into evidence over plaintiff's objections. The deputy commissioner also heard testimony about plaintiff's behavior the day of the injury, as well as the day before the accident. Plaintiff testified he consumed alcohol during the weekend prior to the accident. Several of plaintiff's co-workers, who had been with him during the weekend, confirmed that on Sunday plaintiff had consumed wine throughout much of the day until 9:00 p.m. that evening. The next morning, plaintiff rode with co-workers on the ninety minute trip to the logging site where he was scheduled to work. None of the co-workers riding with plaintiff observed any behavior indicating he was intoxicated. Nor did plaintiff's co-workers detect him acting in an unusual or irresponsible manner during the work shift. Plaintiff's employer testified plaintiff did not seem intoxicated and he appeared to be performing his duties in his usual manner.

There was testimony as to whether plaintiff was observing various safety guidelines when he was injured. Plaintiff stated he was not wearing safety equipment on the day he was injured. Additionally, there was evidence plaintiff was not observing the "two tree-length safety rule" when he was injured. Under the rule, everyone working at a logging site must stay two tree-lengths from where trees are being cut down by the stumper.

The deputy commissioner filed an opinion and award on 2 March 1992 concluding that plaintiff's injury was proximately caused by his intoxication, and this resulted in "[a] lack of judgment, reduced awareness of his surroundings, and dullened [sic] senses" and led to plaintiff's "[failure] to adhere to the standard safety rules of logging." Consequently, the deputy commissioner denied plaintiff workers' compensation benefits based on N. C. Gen. Stat. § 97-12(1) which states, "[n]o compensation shall be payable if the injury or death to the employee was proximately caused by: (1) [h]is intoxication, provided the intoxicant was not supplied by the employer or his agent in a supervisory capacity to the employee."

Plaintiff appealed to the Full Commission and filed a motion to strike the results of the blood test taken at Community Hospital. On 23 May 1994, a divided panel of the Full Commission affirmed and

adopted the deputy commissioner's opinion and award with minor modifications to several of the deputy commissioner's findings of fact. Commissioner James J. Booker dissented and urged that the "correct result in this case would be to follow the rules of evidence and strike from consideration the Halifax/South Boston Community Hospital test results as being inherently unreliable. I would vote to reverse the case and remand to a deputy for rehearing. . . ." We agree with the dissent.

This Court's review is limited to a consideration of whether there was any *competent* evidence to support the Full Commission's findings of fact and whether these findings of fact support the Commission's conclusions of law. *McLean v. Roadway Express*, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982). In *Penland v. Coal Co.*, 246 N.C. 26, 97 S.E.2d 432 (1957), we said:

> Findings not supported by competent evidence are not conclusive and will be set aside on appeal. *The rule is that the evidence must be legally competent; and a finding based on incompetent evidence is not conclusive.* However, where an essential fact found by the Industrial Commission is supported by competent evidence, the finding is conclusive on appeal, even though some incompetent evidence was also admitted at the hearing.

*Penland*, 246 N.C. at 30-31, 97 S.E.2d at 436 (emphasis added) (citations omitted). Under these facts, the issue is whether there is competent evidence to support the Industrial Commission's finding that plaintiff's 11 June 1990 injury was proximately caused by his intoxication and he is therefore barred from receiving workers' compensation benefits under G.S. 97-12(1).

We agree with Commissioner Booker that the only evidence in the record as to plaintiff's intoxication at the time of the accident was the blood alcohol test conducted by Community Hospital. As we have stated, none of plaintiff's co-workers detected any behavior which indicated plaintiff was intoxicated. A later blood alcohol test performed on 11 June 1990 at 6:16 p.m. at Duke University Hospital listed plaintiff's alcohol level as "negative." Therefore, the accuracy of the blood alcohol test taken by Community Hospital is critical since the Industrial Commission denied plaintiff's claim pursuant to the intoxication defense in G.S. 97-12(1).

The admissibility of a blood alcohol test "depends upon a showing of compliance with conditions as to relevancy in point of time, tracing and identification of specimen, accuracy of analysis, and qual-

ification of the witness as an expert in the field." *Robinson v. Insurance Co.*, 255 N.C. 669, 672, 122 S.E.2d 801, 803 (1961). "In other words, a foundation must be laid before this type of evidence is admissible." *Id.* The expert witness who offers the results of these types of scientific tests must be in a position to "[explain] the way the test is conducted, attesting its scientific reliability, and vouching for its correct administration in *the particular case.*" *FCX, Inc. v. Caudill*, 85 N.C. App. 272, 276, 354 S.E.2d 767, 771 (1987) (emphasis added).

The Community Hospital blood alcohol test contains several discrepancies which affect the reliability of the test results. The chain of custody from the time the blood was drawn from plaintiff until it was tested was never clearly established. The expert witness called to testify regarding plaintiff's alcohol blood test was "a management technologist" in the clinical laboratory at Community Hospital. Although the technologist analyzed the blood allegedly taken from plaintiff, he admitted he had not drawn blood in years and that he "didn't know what happened to this particular blood. It was brought to me, and I tested it and reported out the results." He discussed in general terms the hospital's procedure for collecting blood and how the tests are conducted. However, there was no testimony as to the identity of the phlebotomist who drew plaintiff's blood nor the specific manner in which plaintiff's blood was drawn. The technologist further stated alcohol swabs are not used to clean the area where the blood is drawn if the purpose for the blood is to test for blood alcohol levels; but if other blood tests are being conducted, alcohol swabs are used. In plaintiff's case, the technologist testified the physicians ordered several types of blood tests, including the blood alcohol analysis, and there was no testimony as to whether an alcohol or nonalcohol prep was used in drawing plaintiff's blood sample. While our Courts do not require the person who draws the blood to testify in every case in order to establish a proper foundation, (*See State v. Grier*, 307 N.C. 628, 632, 300 S.E.2d 351, 354, (1983) *appeal after remand*, 314 N.C. 59, 331 S.E.2d 669 (1985)) under these facts, other inconsistencies with these critical test results warranted a more thorough development of the chain of custody of plaintiff's blood sample.

Not only is there insufficient evidence to establish an adequate chain of custody of plaintiff's blood sample, but there are other disturbing discrepancies relating to the test. The date and time of the blood test were incorrectly marked as having been drawn on the Sunday afternoon before the accident occurred. The technologist

blamed the inaccuracy on human error or a possible power failure in the laboratory. Further testimony revealed questions as to whether the machine was correctly calibrated when plaintiff's test was conducted. One expert testified a power failure could have affected the machine's calibration and incorrect calibration can affect the reliability of blood tests. Finally, there was testimony that an inadequate number of controls may have been run on this particular specimen which could affect the reliability of plaintiff's test results.

Under these facts, there is insufficient evidence to establish that this critical blood alcohol analysis was scientifically reliable or that it was correctly administered in "compliance with conditions as to relevancy in point of time, tracing and identification of specimen, [and] accuracy of analysis." *Robinson*, 255 N.C. at 672, 122 S.E.2d at 803. We find the blood alcohol test from Community Hospital is incompetent evidence of plaintiff's intoxication and therefore, we reverse the case and remand it to the Industrial Commission for rehearing.

Reversed and remanded.

Chief Judge ARNOLD and Judge LEWIS concur.