CHARLES T. HOLT, Employee, Plaintiff,
v.
PETE WALL PLUMBING, Employer, KEY RISK INSURANCE, Carrier, Defendants.
No. COA08-579
Court of Appeals of North Carolina
Filed April 7, 2009
This case not for publication
Oxner, Thomas & Permar, PLLC, by Todd Oxner, for plaintiff.
Prather Law Firm, by J.D. Prather, for defendants.
ELMORE, Judge.
Pete Wall Plumbing (defendant employer) and Key Risk Insurance Company (defendant carrier; together, defendants) appeal an opinion and award issued by the Full Commission in favor of Charles T. Holt (plaintiff).

Background
The following facts are undisputed: Plaintiff attended school through the eighth grade and did not obtain a GED certificate. He has no vocational or technical training, but has gained substantial plumbing knowledge by working as a plumber. Plaintiff was aplumber with defendant employer for seventeen years. At the time of his injury, he was earning a weekly wage of $561.09.
On 13 March 2000, plaintiff picked up a pedestal lavatory bowl and felt a sudden onset of pain in his lower back. James E. Nitka, M.D., diagnosed plaintiff as having a lumbar sprain/strain. On 7 April 2000, defendants filled out a Form 60,[1] admitting the injury's compensability. Upon Dr. Nitka's recommendation, plaintiff did not work from 27 March 2000 until 3 July 2000, when he returned to work for defendant employer as a "plumber's helper." Plaintiff received temporary total disability benefits of $386.69 during that time. Dr. Nitka gave plaintiff the following work restrictions: no lifting over 10-15 pounds, no bending or stooping, and alternating sitting, standing, and walking. Dr. Nitka's final restrictions, dated 23 May 2001, placed plaintiff on light duty indefinitely, limiting his lifting to 25 pounds, barring bending or stooping, and requiring plaintiff to alternate sitting, standing, and walking. The plumber's helper job was beyond plaintiff's physical limitations as set forth by Dr. Nitka, and therefore was not suitable.
On or about 10 August 2002, the employment relationship between plaintiff and defendant employer ended. Plaintiff alleges that he was fired, while defendant employer alleges that plaintiff quit.[2] From 3 July 2000 until 10 August 2002, defendant employer paid plaintiff approximately $8.00 per hour for his services. The parties dispute the nature of plaintiff's work during that time period. However, the Full Commission found the following relevant, though challenged, facts:
4. When plaintiff returned to work for defendant-employer on July 3, 2000, he was assigned to work in the warehouse as an assistant to Norman Talbot and classified as a "plumber's helper." This warehouse assistant job was not a position that was normally filled by defendant-employer. While Mr. Talbot had an assistant in the past, this position had been vacant for two years prior to plaintiff's filling it, and it was not filled after plaintiff left. Plaintiff's work assignments were ambiguous and irregular. His tasks included sweeping, cleaning the bathrooms, unloading supply trucks, and putting up stock. Defendant-employer produced no written job description. Because of plaintiff's physical limitations as a result of the March 13, 2000[,] injury, defendant-employer accommodated plaintiff and permitted him to spend large portions of the workday in a reclined position with his shoes and socks off.
5. Significant portions of plaintiff's work duties in the "plumber's helper" warehouse job exceeded the restrictions given to him by Dr. Nitka and several times per week plaintiff was asked to perform tasks that exceeded his restrictions. For instance, plaintiff was sent by defendant-employer to pick up 80-pound bags of sackcrete as well as heavy pieces of sheetrock.
6. In addition to working inside the warehouse, plaintiff was often sent to Lowe's or plumbing supply stores to pick up items necessary for defendant-employer's use on various jobs. Many times the weights of these items exceeded plaintiff's lifting restrictions. Defendant-employer's owner, Jimmy Wall, testified that he assumed that plaintiff had a cashier or someone help him lift these items. After plaintiff obtained items from the store, he was required by defendant-employer to deliver them to various worksites. Although purported by defendants to be a light-duty job, the warehouse assistant job given plaintiff violated the lifting restrictions imposed by Dr. Nitka.
7. Upon plaintiff's return to work in the "plumber's helper" warehouse job, defendant-employer paid plaintiff exactly 50% of his pre-injury hourly rate. Defendants offered the testimony of Etta Bridge, a bookkeeper for defendant-employer. Ms. Bridge testified that the company policy was to assess a 50% wage loss to light duty workers without regard to prevailing pay rates for plumber's helpers. The wages defendant-employer paid plaintiff to perform the warehouse "plumber's helper" job were not reflective of what other plumbing companies would pay plaintiff to do plumber's helper work.
9. Following the severance from defendant-employer, plaintiff attempted to return to work for another plumbing company. Plaintiff was physically unable to perform the work and quit within a few months.
10. Kristen Fountain testified as an expert in the field of vocational rehabilitation. Plaintiff has little in the way of transferable skills, has limited education, and is physically incapable of performing any of the jobs in which he has previously been employed. Ms. Fountain testified that plaintiff would be unable to secure suitable employment because of plaintiff's physical condition, education, and transferable skills. While Ms. Fountain believed that it might be possible for plaintiff to obtain a position such as a parking lot attendant, these positions pay between $6.00 and $8.00 per hour and are, therefore, not suitable.
12. In order to accommodate plaintiff's medical limitations, defendant-employer modified the warehouse "plumber's helper "position by allowing him frequent rest breaks and the opportunity to recline. This employment, as modified, is not available in the competitive employment market and is, therefore, not suitable.
13. The warehouse "plumber's helper" position plaintiff performed, even as modified for plaintiff with the addition of frequent rest breaks and the ability to recline, required him to complete duties that were beyond his medical restrictions. Accordingly, this job is not indicative of his wage earning capacity and does not constitute suitable employment.
It is undisputed that, as a result of his injury, plaintiff has only been able to earn wages as a plumber's helper with defendant employer and as a plumber for a few months at the other plumbing company.
Defendants last paid disability compensation on 11 August 2002. Plaintiff filed his request for a hearing on 10 February 2006; he asked for additional disability compensation. On 1 June 2007, Deputy Commissioner James C. Gillen filed an opinion and award in favor of plaintiff. He ordered defendants to pay plaintiff temporary total disability compensation at a rate of $374.08 per week for the period from 27 March 2000 until he returned to work or the Commission ordered otherwise. Defendants then appealed to the Full Commission, which affirmed the Deputy Commissioner's opinion and award. Defendants now appeal the Full Commission's opinion and award.

Arguments
"This Court's review is limited to a consideration of whether there was any competent evidence to support the Full Commission's findings of fact and whether these findings of fact support the Commission's conclusions of law." Johnson v. Charles Keck Logging, 121 N.C. App. 598, 600, 468 S.E.2d 420, 422 (1996) (emphasis omitted) (citing McLean v. Roadway Express, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982)). "[S]o long as there is some evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary."Shah v. Howard Johnson, 140 N.C. App. 58, 61-62, 535 S.E.2d 577, 580 (2000) (quotations and citation omitted). "Thus, on appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quotations and citation omitted).

A. Disability Award
Defendants first argue that the Full Commission erred by concluding as a matter of law that plaintiff was temporarily totally disabled and is entitled to temporary total disability compensation for the period beginning 27 March 2000 and continuing until plaintiff returns to work or further order of the Industrial Commission. Defendants specifically argue that the Full Commission improperly placed the burden of rebutting a presumption ofplaintiff's disability upon defendants; they argue that plaintiff bore the burden of proving his disability.
We agree that plaintiff bore the initial burden of proving his disability and that the Full Commission did not clearly state that plaintiff bore this burden. Without holding that it is judicially required for the Full Commission to explicitly state the burden of proof in its award, we remand to the Full Commission for clarification.
"In order to obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his disability and its extent." Hendrix v. Linn-Corriher Corp., 317 N.C. 179, 185-86, 345 S.E.2d 374, 378 (1986) (citations omitted). To support a conclusion of disability, the plaintiff must prove and the Full Commission must find:
(1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.
Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982) (citation omitted). After the plaintiff proves these elements, the burden shifts to the employer to show that the plaintiff is employable. Effingham v. Kroger Co., 149 N.C. App. 105, 111, 561 S.E.2d 287, 292 (2002). "Admitting compensability and liability, through the use of a Form 60, does not create a presumption of continuing disability"; the burden is still on the plaintiff. Id. at 112, 561 S.E.2d at 292 (citation omitted). Here, plaintiff presented competent evidence of the three Hilliard factors, which the Full Commission recited in its opinion and award, and acknowledged in conclusion of law 8  "Given the credible medical and vocational evidence of record, and as a result of his compensable injury of March 13, 2000, plaintiff was temporarily totally disabled and is entitled to temporary total disability . . . for the periods from March 27[,] 2000, and continuing until plaintiff returns to work[.]" Kristin Fountain's initial vocational report made the following relevant conclusions: (1) "According to the job duties described by Mr. Holt, the return to work position of Warehouse Assistant[3] was not a viable position." (2) "Based on the contacts made with other employers, it does not appear that they would be able to hire Mr. Holt to perform duties as a Warehouse Assistant as business is slow or [they] are family owned and operated." (3) "No appropriate job alternatives were identified matching [plaintiff's] transferable skills, physical limitations, education and work history."
Ms. Fountain confirmed these conclusions in her deposition, during which defendants accepted Ms. Fountain as an expert in the area of vocational rehabilitation. Ms. Fountain testified that, in her opinion, the pay cut of one-third to one-half incurred by plaintiff did not constitute suitable employment. He had made $14.50 per hour as a plumber, but dropped to $7.25 per hour as a warehouse assistant. Ms. Fountain testified that the 2004 medianrange for warehouse assistants in North Carolina was $9.67 per hour, but that warehouse assistant job descriptions usually include lifting in excess of twenty-five pounds.
Ms. Fountain testified that, given plaintiff's education, age, work history, physical restrictions, and pre-injury earning capacity, he would not likely be able to obtain suitable employment. She testified that he could probably find work as a parking lot attendant, a position that typically pays between $6.00 and $8.00 per hour, or other positions that are similarly low-paying but sedentary. Ms. Fountain's testimony, which the Full Commission found credible,[4] establishes the first two Hilliard factors. The third Hilliard factor, whether plaintiff's incapacity to earn was caused by his injury, is clearly established by Dr. Nitka's medical reports. These reports state that plaintiff's work restrictions are the result of his lower back injury.
Although it appears that the Full Commission's opinion and award is based upon a proper examination of competent evidence presented by plaintiff, and that this evidence satisfies the three Hilliard factors, there is also evidence that the Full Commission misunderstood who bore the burden of proof. Conclusion of law 4 states, in relevant part:
[A]n employer may rebut the presumption of continuing disability through evidence "that suitable jobs are available to the employee and that the employee is capable of getting one, taking into account the employee's physical and vocational limitations." Franklin v. Broyhill Furniture Industries, 123 N.C. App. 200, 206, 472 S.E.2d 382, 386 (1996). "[M]ere proof of a return to work is insufficient to rebut the . . . presumption," because "capacity to earn is the benchmark test of disability." Kisiah v. W.R. Kisiah Plumbing, 124 N.C. App. 72, 81, 476 S.E.2d 434, 439 (1996).
These references to a rebuttable presumption suggest that the Full Commission may have shifted the burden of proof of plaintiff's disability from plaintiff to defendants. This language of presumption is contrary to the substance of the Full Commission's findings and conclusions, which met its obligation "to make specific findings regarding the existence and extent of any disability suffered by plaintiff." Clark v. Wal-Mart, 360 N.C. 41, 44, 619 S.E.2d 491, 493 (2005) (quotations and citation omitted). Accordingly, we remand to the Full Commission to allow it to state clearly which party had the burden of proof and what that party had the burden to prove.

B. Time Limitations
Defendants next argue that plaintiff "was not timely in alleging make-work as a basis for the present claim for benefits." Defendants argue that plaintiff cannot rely on the protections of N.C. Gen. Stat. § 97-32.1 because "more than nine months elapsed before plaintiff quit his job and several years passed before he asserted a claim for additional benefits." N.C. Gen. Stat. § 97-32.1 states, in its entirety: Notwithstanding the provisions of G.S. 97-32, an employee may attempt a trial return to work for a period not to exceed nine months. During a trial return to work period, the employee shall be paid any compensation which may be owed for partial disability pursuant to G.S. 97-30. If the trial return to work is unsuccessful, the employee's right to continuing compensation under G.S. 97-29 shall be unimpaired unless terminated or suspended thereafter pursuant to the provisions of this Article.
N.C. Gen. Stat. § 97-32.1 (2007).[5] Form 28T, which provides notice of an employee's disability compensation by reason of a trial return to work pursuant to N.C. Gen. Stat. §§ 97-18.1(b) and 97-32.1 includes the following notice to the employee:
You are entitled to a trial return to work for a period not to exceed nine (9) months . . . . During your trial return to work you may be entitled to partial disability compensation if, because of your on the job injury, you earn less wages now than before your injury. In order to request that your compensation be reinstated if your trial return to work is unsuccessful, you should complete Form 28U.
We agree with defendants that the trial return to work period is limited to nine months. However, at the end of that nine-month period, an employee does not lose his right to disability compensation; he only loses the right to have disability compensation automatically reinstated. Section 97-32.1 is intended to encourage employees to return to work without fear of losing their disability benefits by specifying that the benefits will be automatically reinstated if the return to work fails within nine months. It does not extinguish an employee's other existing rights under the Workers' Compensation Act.
Defendants also contend that plaintiff was time-barred from arguing that the plumber's assistant job was unsuitable. Defendants do not point to any authority that supports this position, but rather reason that "[t]o rule otherwise would permit the plaintiff to remain out of work indefinitely with no statute of limitations[.]" "Until all of an injured employee's compensable injuries and disabilities have been considered and adjudicated by the Commission, the proceeding pends for the purpose of evaluation, absent laches or some statutory time limitation." Wilhite v. Veneer Co., 303 N.C. 281, 284, 278 S.E.2d 234, 236 (1981) (quotations and citations omitted). Defendants do not make a serious laches argument nor do they point to any statutory time limitation. Consequently, we find that this argument lacks merit.
We remand to the Full Commission for clarification as to the burden of proof consistent with this opinion. The remainder of defendants' arguments are without merit.
Remanded.
Judges HUNTER, Robert C., and JACKSON concur.
Report per Rule 30(e).
NOTES
[1] "N.C.G.S. § 97-18(b) permits an employer to admit that the injury suffered by the employee is compensable, that the employer is liable for compensation, and to notify the Commission of such action by use of a Form 60." Effingham v. Kroger Co., 149 N.C. App. 105, 111-12, 561 S.E.2d 287, 292 (2002) (citation omitted).
[2] We note, however, that defendants do not argue this issue in their brief, nor is it the basis of any argument.
[3] Ms. Fountain used the term "warehouse assistant" to describe the job that the parties refer to as a "plumber's assistant." We use the terms interchangeably.
[4] "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." Adams v. AVX Corp., 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quotations and citation omitted).
[5] N.C. Gen. Stat. § 97-32 states, in its entirety: "If an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." N.C. Gen. Stat. § 97-32 (2007). Section 97-29 sets the compensation rates for total incapacity. N.C. Gen. Stat. § 97-29 (2007).