STATE OF NORTH CAROLINA EX REL. BEVERLY WILLIAMS, MOTHER OF LATOYA RASHUNDA WILLIAMS, MINOR CHILD v. WILLIAM EARL COPPEDGE

No. 919DC89

(Filed 3 March 1992)

**1. Bastards § 5.1 (NCI3d) — expert on genetic determination of paternity — opinion as to defendant's paternity properly excluded**

The trial court in a paternity action did not err in allowing an expert in the field of genetic determination of paternity who performed blood grouping tests to testify that he had an opinion as to whether defendant was the natural father but then denying the witness the opportunity to give his opin-

ion, since the witness's opinion was not of assistance to the trier of fact where the jury was in an equally good position to consider all the nongenetic surrounding circumstances, to assign weight to the nongenetic factors, to combine these figures with the paternity index, and to determine the probability that defendant was the father.

**Am Jur 2d, Bastards § 118.**

**Admissibility and weight of blood-grouping tests in disputed paternity cases. 43 ALR4th 579.**

2. **Bastards § 5 (NCI3d)— mother's reputation for sexual promiscuity — attack on credibility inadmissible — admissibility to refute evidence of access to mother**

Evidence in a paternity case as to the mother's reputation for sexual promiscuity was inadmissible to attack her credibility; however, such reputation evidence was admissible to refute the mother's testimony that she had a monogamous relationship with defendant from the time of conception until about the time of the child's birth. N.C.G.S. § 8C-1, Rule 608.

**Am Jur 2d, Bastards §§ 115, 116.**

**Admissibility, in disputed paternity proceedings, of evidence to rebut mother's claim of prior chastity. 59 ALR3d 659.**

Judge WALKER dissenting.

APPEAL by the State from a judgment filed 17 September 1990 by *Judge C. W. Allen, Jr.* in FRANKLIN County District Court. Heard in the Court of Appeals 6 November 1991.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General T. Byron Smith, for the State.*

*No brief for defendant-appellee.*

LEWIS, Judge.

The first issue in this case is whether a court accepted expert in the field of genetic determination of paternity can be permitted to testify that he has an opinion as to whether the defendant in a paternity action is the natural father, but then be denied

the opportunity to give his opinion. Also at issue is whether the putative father may offer evidence of the mother's reputation.

On 14 February 1983, Latoya Williams was born out of wedlock to sixteen year old Beverly Williams. Latoya has received, via her caretaker Holly M. Williams, public assistance totaling $10,114.00 as of 30 June 1988. Plaintiff, the North Carolina Child Support Enforcement Agency (Agency), filed suit against Mr. Coppedge, on 1 July 1988, in order to establish paternity and support for the child and to obtain reimbursement for the state funds expended on Latoya's behalf. At the time of trial, Latoya was seven and Ms. Williams was twenty-three.

The Agency tendered and the court accepted an expert in genetic evaluation of paternity. The expert, an immunologist, testified that he performed blood tests and comparisons on Beverly Williams, Latoya Williams and on William Coppedge. The tests revealed that the probability that Mr. Coppedge was Latoya's biological father was 99.2%. The court permitted the expert to state this numerical test result and to say that he had an opinion as to whether or not Mr. Coppedge was Latoya's natural father. Upon objection he was not permitted to testify as to his opinion.

Beverly Williams testified that she first met William Coppedge in early spring and had a monogamous sexual relationship with him from April until the end of 1982. After Latoya was born defendant visited her in the hospital, held the baby, and "brought [the child] stuff." She alleges that they saw each other on and off for two years; however, after Latoya's birth, Mr. Coppedge requested that Ms. Williams not reveal their sexual interludes because Ms. Williams' age at the time of conception would place him in jeopardy of "going to jail" [i.e. for statutory rape].

Mr. Coppedge, on the other hand, denies paternity. He admits that he has known Ms. Williams for nine years, admits their cohabitation, but denies having intimate relations with Ms. Williams until July or August of 1982. Further, he admits to only one sexual contact because he learned of her true age of 15 years. Testifying on behalf of the defendant, a Child Support Enforcement Officer stated that Ms. Williams declined to name anyone as Latoya's father on the first interview, later named another man, but finally named Mr. Coppedge.

STATE EX REL. WILLIAMS v. COPPEDGE

[105 N.C. App. 470 (1992)]

Over the State's objection, Mr. Coppedge was permitted to testify as to Ms. Williams' sexually promiscuous reputation at the time of Latoya's conception.

Q: Mr. Coppedge, you need to answer this question yes or no. Do you know of your own knowledge what Beverly Williams' reputation was concerning her using her body for sex in exchange for drugs and alcohol? Answer yes or no.

Objection.

Overruled.

A: Yes.

COURT: Wait, now. When are you talking about?

In July and August of 1982.

COURT: Overruled. Go ahead.

Q. What is her reputation. . .

COURT: What was, what was.

Q. What was her reputation during that period of time for using her body for sex in exchange for drugs and alcohol?

Objection.

Overruled.

A: That's exactly what she was doing.

COURT: No. What was her reputation?

A: That was her reputation. If somebody had some money where they could give her or had some drugs, you know, they was good to go.

Object and move to strike as being not responsive.

Overruled. Motion to strike denied.

The jury found that Mr. Coppedge was not Latoya's father. The State appeals from imposition of judgment on the verdict.

The State assigns two errors. First, the State claims that the trial court erred in prohibiting the accepted expert's opinion as to whether Mr. Coppedge is Latoya's natural father. Second,

the State claims that it was error for the trial court to permit reputation testimony to discredit Ms. Williams' veracity.

[1] On the first allegation of error, we find instructive our Supreme Court's holding in *State v. Jackson*, 320 N.C. 452, 358 S.E.2d 679 (1987). Though paternity was not a central issue in that rape trial, the Court upheld the following testimony presented at trial by a geneticist regarding the results of a genetic paternity evaluation:

> based on the [blood] tests of the [rape] victim (mother), defendant, and the [victim's] child, (1) defendant could not be excluded as the father of the victim's child; (2) the frequency of the defendant's genes in the black population, based upon a probability that a random man in the population would carry his gene markers is 0.0068, or less than 1%; (3) the "likelihood of paternity" is 93.4% at the low range, 99.21% at the median range, and 99.91% at the high range; (4) the "paternity index," expressed as an "odds ratio" is, at the low range, 14 to 1; at the median range 126.2 to 1; and at the high range, 1,135 to 1; (5) the likelihood of nonpaternity is 6.6% at the weak level, 0.79% at the median level, and 0.09% at the strong level.

*Id.* at 456, 358 S.E.2d at 681. Also upheld was the geneticist's testimony regarding the proper application of the numerical ranges, i.e., that the lower ranges apply if the jury finds that the nongenetic evidence is weak.

The Court overturned the admission of the geneticist's opinion as to whether the defendant was the father of the rape victim's child. Probability of paternity is calculated by combining nongenetic with genetic information. *Id.* at 458, 358 S.E.2d at 682. The nongenetic factor consists of evidence of all the surrounding circumstances such as: the putative father's access to the mother, the putative father's fertility, etc. The nongenetic factor is assigned a numerical value based upon the geneticist's determination of its weight or significance in the present case. *Id.* at 458-59, 358 S.E.2d at 682. The geneticist then inserts both genetic and nongenetic factors into the appropriate formula and the probability of paternity results.

The Court indicated that the geneticist's "testimony on the use of the paternity index was unquestionably of assistance to the trier of fact." *Id.* at 460, 358 S.E.2d at 683. However, because the probability of paternity was "based not only upon 'scientific, technical, or other knowledge,' . . . but also on [the geneticist's]

own assumptions about the [nongenetic surrounding circumstances information], . . . the jury was in as good a position as [the geneticist] to determine whether the defendant was 'probably' the father of the victim's child." *Id.* As an expert's opinion is admissible only where it "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ," N.C.G.S. § 8C-1, Rule 702 (1988), the geneticist's calculation of probability of paternity is of "no assistance to the trier of fact and should [be] excluded on that basis." *Jackson,* at 460, 358 S.E.2d at 683.

In the case at bar, the expert was permitted to give six pages of transcript testimony explaining the nature, process, reliability, and the significance of paternity blood tests in general. The expert testified as to the numerical probability of paternity (99.2%), the probability of nonpaternity, the power of exclusion, and the significance of each of these numerical values. The expert was also permitted to testify that no blood test gives a perfect result and that not even the mother has perfect knowledge regarding this matter. The State elicited further testimony from this expert which showed that the test gave the defendant the benefit of the doubt by considering nongenetic outside evidence equally with genetic evidence.

The portion of the transcript pertinent to the State's objection reveals the following interchange:

Q: Doctor, based upon your evaluation, do you have an *opinion relative to William Earl Coppedge being the natural father* of Latoya Williams?

Objection.

side bar

Court: Your question was "Do you have an opinion." Is that right?

Prosecutor: That's correct.

Court: I'm going to let you answer that just yes or no.

A: Yes. I do have an opinion.

Court: Stop right there. Next question.

Q: Doctor would you express your opinion to the court?

Objection.

Court: Sustained. Don't answer that.

(Emphasis added). It is abundantly clear that the trial court complied with *Jackson* both in the testimony admitted and excluded. The trial court, in the case at bar, correctly prohibited the expert's opinion as to whether Mr. Coppedge was Latoya's natural father because it was not of "assistance to the trier of fact" where the jury is in an equally good position to consider all of the nongenetic surrounding circumstances to assign weight to the nongenetic factors, to combine these figures with the paternity index, and to determine the probability that Mr. Coppedge was Latoya's father. Proffer of the geneticist's opinion as to the probability of paternity would have gone beyond testimony as to scientific information and would thus have trampled upon the jury's domain. This is not permitted under N.C.G.S. § 8C-1, Rule 702 (1988). *Jackson*, at 460, 358 S.E.2d at 683. Hence, constrained by the holding in *Jackson* above, we uphold the trial court's exclusion of the expert's opinion as to the probability that Mr. Coppedge was Latoya's father.

[2] The State's second assignment of error alleges that Ms. Williams' reputation for sexual promiscuity was admitted to cast doubt upon Ms. Williams' credibility and, as such, should have been excluded. With this proposition we agree. North Carolina Rule of Evidence, Rule 608 prohibits attacking a witness' credibility by opinion, reputation, or specific prior acts by this witness unless those specific acts bear on the witness' character for truthfulness. "[E]vidence routinely disapproved as irrelevant to the question of a witness' general veracity (credibility) includes specific instances of conduct relating to 'sexual relationships or proclivities, the bearing of illigitimate [sic] children, the use of drugs or alcohol. . . .' " *State v. Morgan*, 315 N.C. 626, 635, 340 S.E.2d 84, 90 (1986) (citation omitted). Ms. Williams' reputation for sexual promiscuity would not be admissible to attack her credibility.

This reputation evidence, however, is admissible to refute Ms. Williams' testimony that she had a monogamous relationship with the defendant from the time of conception until about the time of the child's birth. This testimony "opened the door" to evidence regarding Ms. Williams' other sexual relationships during the window of the time that surrounded the child's conception. We recognize that character evidence is generally not admitted in civil cases unless it is character which is in issue because this evidence is

often more prejudicial than probative. N.C.G.S. § 8C-1, Rule 403 (1988). Here, however, evidence of sexual activity and promiscuity goes to a central element of this case: opportunity to impregnate Ms. Williams. Whether or not other men had the opportunity to father Latoya is of ultimate relevance to this issue of paternity. N.C.G.S. § 8C-1, Rule 401 (1988). In addition, this nongenetic outside information, as a factor in the probability of paternity calculation, must be received in order for the jury to weigh the expert's assumptions underlying the calculation of numerical probability of paternity. Hence, we uphold the admission of Ms. Williams' reputation for sexual promiscuity.

Further, we find both instructive and controlling the case of *State v. Warren*, 124 N.C. 807, 32 S.E. 552 (1899). *Warren* was a bastardy case in which our Supreme Court held that specific instance evidence that the mother had had intimate relations with another man during the time of conception was admissible by the alleged father. The Court indicated that this evidence is competent and admissible only for instances which occur during the time period of conception. "It [is] incompetent for the purpose of contradicting the prosecutrix (citation omitted). . . . It [is also] incompetent as corroborative evidence of the defendant. . . ." *Id.* at 809, 32 S.E. at 553. The rationale is that the only issue before the jury is whether or not the defendant is the child's father and *"whatever* tends to prove or disprove the affirmative of this issue is competent." *Id.* (emphasis added). Because evidence that another man had intercourse with the mother during the time period of conception "bears directly upon the issue," it is competent and as such it is admissible. *Id.*

The case at bar differs from *Warren* in that Mr. Coppedge proffered reputation rather than specific instance evidence. However, the *Warren* Court focused upon the issue at hand: paternity, and indicated that "whatever tends to prove or disprove" this issue is competent. *Id.* Reputation evidence falls within "whatever" evidence. Even though reputation evidence is less concrete than specific instance evidence and even though its offer into evidence may be suspect when presented by the putative father whose desire it is to exculpate himself, both of these concerns go to the weight rather than the admissibility of this type of evidence. It is for the jury to determine its weight and to balance the scales. We hold that the reputation evidence was properly admitted.

STATE ex rel. WILLIAMS v. COPPEDGE

[105 N.C. App. 470 (1992)]

We find no prejudicial error.

Affirmed.

Judge WELLS concurs.

Judge WALKER dissents.

Judge WALKER dissenting.

I respectfully dissent from that portion of the majority opinion which holds Mr. Coppedge's testimony concerning Ms. Williams' reputation for sexual promiscuity was properly admitted. Before addressing the issue of whether such testimony is competent substantive evidence, I first take exception to the trial court's failure to sustain counsel's objections because the proper method of qualifying a character witness proffered to give reputation testimony was not followed. Established case law provides that:

> [W]hen an impeaching or sustaining character witness is called, he should first be asked whether he knows the general reputation and character of the witness or party about which he proposes to testify. This is a preliminary qualifying question which should be answered yes or no. If the witness answer [sic] it in the negative, he should be stood aside without further examination. If he reply [sic] in the affirmative, thus qualifying himself to speak on the subject of *general* reputation and character, counsel may then ask him to state what it is. This he may do categorically, i.e., simply saying that it is good or bad, without more, or he may, of his own volition, but without suggestion from counsel offering the witness, amplify or qualify his testimony, by adding that it is good for certain virtues or bad for certain vices.

*State v. Sidden*, 315 N.C. 539, 546, 340 S.E.2d 340, 345 (1986), *quoting State v. Hicks*, 200 N.C. 539, 540-541, 157 S.E. 851, 852 (1931). (Emphasis in original).

In this case the reputation evidence was solicited without laying the proper foundation for such testimony. Although it was established that Mr. Coppedge knew Ms. Williams, the record is devoid of any evidence that he knew of Ms. Williams' reputation for "using her body for sex in exchange for drugs and alcohol" from his contacts with members of the community in which Ms.

STATE EX REL. WILLIAMS v. COPPEDGE

[105 N.C. App. 470 (1992)]

Williams worked or lived. There was no inquiry as to how and on what basis Mr. Coppedge gleaned his knowledge so as to qualify him as competent to testify concerning Ms. Williams' reputation. Further, counsel omitted any preliminary qualifying question on the subject of general reputation but directly sought to elicit testimony enumerating specific character traits, i.e. Ms. Williams' inclination to use her body for sex in exchange for drugs or alcohol. Mr. Coppedge was permitted to testify categorically concerning the general reputation of Ms. Williams and, by his own volition, could have amplified his testimony by stating it was bad for certain vices. Here, his testimony was elicited absent the proper foundation and preliminary questioning and after being prompted through counsel's leading question.

Although our Supreme Court has said on occasion it was error for failure to follow the correct procedures in eliciting reputation evidence, such is not usually prejudicial error. However, I am not convinced that no prejudice resulted from this noncompliance in light of the fact Mr. Coppedge's testimony was the only evidence regarding Ms. Williams' alleged use of her body for sex in exchange for drugs or alcohol. For this reason, I am of the opinion that the trial court should have sustained the objections and excluded the testimony concerning Ms. Williams' reputation.

Notwithstanding the fact it is reputation evidence, the majority holds this evidence is admissible because it relates to a central element of the case: the opportunity to impregnate Ms. Williams. I do not believe *State v. Warren*, 124 N.C. 807, 32 S.E. 552 (1899) can be so broadly construed as to support this conclusion. *Warren* held that evidence of specific conduct between the mother and another man at the time of conception was competent and admissible by the putative father as relevant to the issue of paternity. Notably, this evidence was of a specific and identifiable act at a certain time which, if accepted as true, would have a bearing on the issue of paternity. In the case before us the reputation evidence covering July and August 1982 would not increase the likelihood of proving or disproving the central issue of paternity but is no more than a broadside attack on the character of Ms. Williams.

Likewise in *State v. Farmer*, 63 N.C.App. 384, 304 S.E.2d 765 (1983), where the twins were born on 18 September 1978, defendant was permitted to ask the prosecuting witness about sexual

GRAY v. CAROLINA FREIGHT CARRIERS

[105 N.C. App. 480 (1992)]

intercourse with Earl Jones in November and December 1977. The court sustained objections, however, to defendant's questions concerning how long the prosecuting witness had dated Jones, how many times she had sexual intercourse with him, and where he lived. This Court upheld the trial court's finding that the excluded evidence had no logical tendency to prove the fact in issue: whether defendant was the father of the twins.

Further, I cannot uphold the admission of this testimony into evidence as it does not pass muster under the requisite balancing test of G.S. 8C-1, Rule 403, which provides in pertinent part:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

As the majority noted, character evidence is generally not admitted in civil cases unless character is an issue because this evidence is often more prejudicial than probative. This case offers a prime example. The evidence of Ms. Williams' character has questionable probative value, as it does not tend to prove or disprove the issue of paternity, and is highly prejudicial in that it attempts to discredit Ms. Williams through denigration of her reputation. Therefore, having concluded it was prejudicial error to admit this reputation evidence, I dissent.