BROOKS v. HAYES

[113 N.C. App. 168 (1993)]

TIMMIE HILL BROOKS, Plaintiff v. BRUCE RICHARD HAYES, Defendant

No. 9218DC1262

(Filed 21 December 1993)

**1. Evidence and Witnesses § 565 (NCI4th)— paternity— vasectomy—expert testimony about recanalization**

In a paternity action in which defendant contended that he could not be the father of plaintiff's two children because he had had a successful vasectomy before they were conceived, the trial court properly admitted testimony by a urologist that after a vasectomy, recanalization, which is the natural reconnection of the severed ends of the vas, is medically possible, that the vas can disconnect again without the patient ever knowing it, and that because of this phenomenon, a sterility test showing that no sperm is present is not a guarantee that a man was sterile before the test or will remain sterile after the test.

**Am Jur 2d, Bastards § 104 et seq.**

**2. Evidence and Witnesses § 565 (NCI4th)— paternity—use of centrifuge in sterility tests—standard practice—expert testimony**

A urologist was properly permitted to testify in a paternity action that the use of a centrifuge to detect sperm is standard practice because it is the only way to be sure that no sperm are present in a semen sample since this testimony explained how defendant's earlier tests which did not use the centrifuge could have failed to reveal the presence of sperm in the samples.

**Am Jur 2d, Bastards § 104 et seq.**

**3. Evidence and Witnesses § 565 (NCI4th)— paternity—surgical procedure reversing vasectomy—irrelevancy**

A urologist's testimony about a surgical procedure that accomplishes the same results as recanalization was irrelevant and improperly admitted in a paternity action where there was no evidence that such an operation had been performed on defendant.

**Am Jur 2d, Bastards § 104 et seq.**

BROOKS v. HAYES

[113 N.C. App. 168 (1993)]

**4. Evidence and Witnesses § 2148 (NCI4th) — paternity — expert testimony that defendant is father — inadmissibility**

The trial court in a paternity action erred by permitting plaintiff's genetics and paternity testing experts to express their opinions that defendant is the father of plaintiff's two children since this testimony does not aid the jury and tramples upon the jury's domain.

**Am Jur 2d, Expert and Opinion Evidence §§ 1-12.**

**5. Illegitimate Children § 9 (NCI4th) — paternity — sufficiency of evidence**

Plaintiff's evidence was sufficient for the jury in a paternity action, notwithstanding evidence by defendant that he underwent a successful vasectomy before plaintiff's children were conceived, where a urologist testified that the severed ends of the vas may be reconnected by a natural process known as recanalization, and plaintiff presented evidence that DNA test results tended to show that defendant is the children's father.

**Am Jur 2d, Bastards § 104 et seq.**

Appeal by defendant from judgment entered 1 May 1992 by Judge Thomas G. Foster, Jr. in Guilford County District Court. Heard in the Court of Appeals 15 November 1993.

Plaintiff sued defendant to establish that he is the father of her two children. Defendant denied the allegations, claiming that he could not be the father because he underwent a successful vasectomy several years before the children were conceived. After hearing the results of several DNA tests, the probability of paternity derived from those tests, and medical testimony regarding the possibility of intermittent periods of fertility after a vasectomy, the jury found that defendant was the children's father. The trial judge entered judgment and taxed defendant with costs. From this judgment defendant appeals.

*Adams Kleemeier Hagan Hannah & Fouts, by Clinton Eudy, Jr. and Trudy A. Ennis, for plaintiff appellee.*

*White and Crumpler, by Fred G. Crumpler, Jr. and Clyde C. Randolph, Jr., for defendant appellant.*

ARNOLD, Chief Judge.

At trial, plaintiff presented an expert urologist's testimony. Defendant argues that much of this testimony was erroneously allowed into evidence, especially testimony regarding the possibility of recanalization or intermittent recanalization after defendant's vasectomy.

[1]   A vasectomy is performed by removing a portion of the canal through which sperm travels, called the vas. The urologist testified that after a vasectomy, recanalization, which is the natural reconnection of the severed ends of the vas, is medically possible. As a result of the recanalization, the patient is fertile again. A vasectomy patient would never know recanalization occurred unless he was tested or he impregnated a woman. The urologist further testified that the vas can disconnect again without the patient ever knowing it and that because of this phenomenon, a sterility test showing that no sperm is present is not a guarantee that a man was sterile before the test or will remain sterile after the test. Recanalization has been documented as long as eight and a half years after a vasectomy.

This testimony was properly allowed into evidence. Expert testimony is admissible when it informs the jury about matters not within the full understanding of lay persons. *State v. Jackson*, 320 N.C. 452, 460, 358 S.E.2d 679, 683 (1987). Plaintiff's urologist was qualified as an expert, and his testimony explaining recanalization was certainly helpful to the jury in determining if defendant could be the father of plaintiff's children. It provided an explanation for how defendant might have impregnated plaintiff after his vasectomy. The chance of recanalization was small, but that did not render this testimony inadmissible, nor was the testimony inadmissible because the urologist did not state there was a reasonable probability that defendant experienced intermittent recanalization. An expert is permitted to testify that a particular cause "could have" or "possibly" produced a particular result. *Barbecue Inn, Inc. v. Carolina Power & Light Co.*, 88 N.C. App. 355, 360, 363 S.E.2d 362, 366 (1988). In light of defendant's medical records which, according to the urologist, showed that defendant exhibited certain physical signs that identify a person at risk of recanalization, we hold that the urologist's testimony was properly allowed into evidence.

BROOKS v. HAYES

[113 N.C. App. 168 (1993)]

[2]  The urologist's testimony that centrifuging is the standard medical procedure for sterility testing was also properly admitted. He testified that using a centrifuge to detect sperm is standard practice because it is the only way to be sure that no sperm are present in a semen sample. As an expert urologist, the witness was qualified to advise the jury of a medical standard. *See Elliott v. Owen*, 99 N.C. App. 465, 393 S.E.2d 347 (1990) (expert usually required to establish standard in malpractice lawsuit). In addition, the testimony was helpful to the jury. Prior to this lawsuit, none of defendant's sterility tests revealed the presence of sperm, but none of these tests incorporated the centrifuge technique. The urologist's testimony explained how these earlier tests could fail to reveal the presence of sperm when it was present.

[3]  Defendant also argues that the urologist should not have been permitted to testify about a surgical procedure that accomplishes the same result as recanalization. We agree. Plaintiff did not contend that such an operation was performed on defendant, nor was there any evidence that such an operation was performed. The testimony was, therefore, irrelevant, and accordingly, it did not aid the jury in determining if defendant was the children's father. Because it was irrelevant, this testimony was improperly admitted. N.C.R. Evid. 402.

[4]  Next defendant argues that plaintiff's genetics and paternity testing experts should not have been allowed to express their opinions that defendant is the children's father. We agree.

A genetics expert may not express an opinion on who is a child's father because the opinion does not aid the jury. *Jackson*, 320 N.C. at 460, 358 S.E.2d at 683. The jury is capable of deciding if a defendant is a child's father once the expert explains the scientific data that was gathered and provides the resulting probability figures. *Id. See also Lombroia v. Peek*, 107 N.C. App. 745, 749-50, 421 S.E.2d 784, 787 (1992). Allowing an expert to express an opinion as to who is the father tramples upon the jury's domain. *State ex rel. Williams v. Coppedge*, 105 N.C. App. 470, 476, 414 S.E.2d 81, 84, *rev'd on other grounds*, 332 N.C. 654, 422 S.E.2d 691 (1992). Although DNA tests may provide more accurate results than the older blood tests, the rationale behind prohibiting the expert from expressing an opinion as to fatherhood remains intact. We, therefore, hold that the trial court erred in allowing the two experts to express their opinions on this issue.

**[5]**  Finally, we reject defendant's argument that he was entitled to a directed verdict. Because we hold that the urologist's testimony regarding recanalization was properly admitted and because the DNA test results tended to prove that defendant is the children's father, there was sufficient evidence to send the case to the jury.

Discussion of defendant's remaining arguments is unnecessary since we determine there must be a

New trial.

Judges WELLS and JOHNSON concur.