MARY FRANCES LOMBROIA, PLAINTIFF/APPELLEE v. RONALD E. PEEK, DEFENDANT/APPELLANT

No. 9128DC853

(Filed 20 October 1992)

1. **Evidence and Witnesses § 565 (NCI4th) — paternity — judgment of Florida court that husband not natural father — admission erroneous**

    The trial court erred in a paternity action by admitting a Florida judgment which found that plaintiff's husband was not the natural father of the child where defendant was not a party to the Florida action and cannot be bound by the findings of that judgment. This error alone was not sufficient to mandate a new trial in light of the other competent evidence presented by plaintiff to rebut the presumption of paternity, but, when combined with additional errors, requires a new trial.

    **Am Jur 2d, Bastards §§ 74, 94, 104, 107, 118.**

    **Admissibility and weight of blood-grouping tests in disputed paternity cases. 43 ALR4th 579.**

2. **Evidence and Witnesses § 1920 (NCI4th) — paternity — testimony concerning blood test — chain of custody — opinion of paternity**

    The trial court erred in a paternity action by admitting the testimony of an expert in immunology and paternity evaluation concerning a report of a blood test prepared by a Florida physician where plaintiff offered no witness competent to testify as to the proper administration of the blood test nor of the proper chain of possession, transportation, and safekeeping of the blood sample sufficient to establish a likelihood that the blood tested was in fact blood drawn from plaintiff's husband.

    **Am Jur 2d, Bastards §§ 74, 94, 104, 107, 118.**

    **Admissibility and weight of blood-grouping tests in disputed paternity cases. 43 ALR4th 579.**

3. **Evidence and Witnesses § 2150 (NCI4th) — paternity — testimony of expert — improper**

The trial court erred in a paternity action by allowing an expert to testify that in his opinion "it's extremely likely" that defendant is the father of the child. The North Carolina Supreme Court concluded in *State v. Jackson*, 320 N.C. 452, that the jury is equally capable of weighing the genetic factors along with the nongenetic circumstances to determine the ultimate probability of paternity.

**Am Jur 2d, Bastards §§ 74, 94, 104, 107, 118.**

**Admissibility and weight of blood-grouping tests in disputed paternity cases. 43 ALR4th 579.**

4. **Illegitimate Children § 9 (NCI4th) — paternity — sufficiency of evidence to rebut presumption**

Although remanded on other grounds, there was sufficient evidence in a paternity action to rebut the presumption of legitimacy in favor of the husband and require submission of the case to the jury where plaintiff's evidence included the results of a blood test which established that defendant would be 377 times more likely to be the father of the minor child and that the probability of paternity is 99.7%, testimony concerning the sexual relationship between plaintiff and defendant at the time of the child's conception, and lack of contact between plaintiff and her husband at that time.

**Am Jur 2d, Bastards §§ 74, 94, 104, 107, 118.**

**Admissibility and weight of blood-grouping tests in disputed paternity cases. 43 ALR4th 579.**

5. **Illegitimate Children § 4 (NCI4th) — paternity — husband — not a necessary party**

The trial court did not err in a paternity action by ruling that plaintiff's husband, Thomas Lombroia, was not a necessary party to a paternity action where defendant contended that another judge had requested that plaintiff's counsel prepare an order making Lombroia a party to the proceeding, the request was not made while court was in session and the order was never prepared or executed by any judge, and the outcome of this case will not affect Mr. Lombroia's interest in any way because his rights and responsibilities with regard

LOMBROIA v. PEEK

[107 N.C. App. 745 (1992)]

to the child had been finally determined when a Florida court found that he was not the father.

**Am Jur 2d, Bastards §§ 74, 94, 104, 107, 118.**

**Admissibility and weight of blood-grouping tests in disputed paternity cases. 43 ALR4th 579.**

APPEAL by defendant from *Brown (Shirley H.), Judge.* Judgment entered 8 February 1991 in District Court, BUNCOMBE County. Heard in the Court of Appeals 16 September 1992.

Plaintiff instituted this civil action by complaint filed 21 December 1988 requesting that defendant be adjudicated the father of her child Brendon Scott Lombroia. In her pleadings, plaintiff stated that she was married to Thomas Robert Lombroia when the child was conceived and born, and that a Florida court had previously entered an order declaring that Mr. Lombroia was not the natural father of the minor child. Defendant answered denying paternity.

The matter was tried before a jury which returned a verdict in favor of plaintiff finding defendant to be the father of the minor child. From entry of judgment in accordance with that verdict, defendant appeals.

*Sutton & Edmonds, by John R. Sutton, and Carol A. Saliba, for plaintiff, appellee.*

*Hyler & Lopez, P.A., by George B. Hyler, Jr., and Robert J. Lopez, for defendant, appellant.*

HEDRICK, Chief Judge.

[1] Defendant first assigns error to the trial court's admission into evidence of the Florida judgment which found that Thomas Lombroia, plaintiff's husband at the time of the birth of the minor child, was not the father of that child. Plaintiff contends that the judgment was admissible to rebut the common law presumption, as set forth in *Eubanks v. Eubanks*, 273 N.C. 189, 159 S.E.2d 562 (1968), that "[w]hen a child is born in wedlock, . . . [it is] legitimate, and this presumption can be rebutted only by facts and circumstances which show that the husband could not have been the father . . . ." *Id.*, at 197, 159 S.E.2d at 568.

Assuming *arguendo* that plaintiff is required to show that her husband is not the father of the child in order to establish her claim against this defendant, a judgment or finding of another court cannot be used to prove a fact essential to that judgment, except where the principle of *res judicata* is involved. *See Wiles v. Mullinax*, 275 N.C. 473, 168 S.E.2d 366 (1969); *Warren v. Insurance Co.*, 215 N.C. 402, 2 S.E.2d 17 (1939); *Bank v. McCaskill*, 174 N.C. 362, 93 S.E. 905 (1917); Comment, G.S. § 8C-1, Rule 803(23), *citing* Brandis on North Carolina Evidence § 143 (1982). Defendant was not a party to the Florida action and he cannot be bound by the findings of that judgment. *Warren v. Insurance Co.*, 215 N.C. at 404, 2 S.E.2d at 18.

We find that the trial court did commit error in allowing the Floridian judgment to be introduced as evidence, yet we do not find this error alone sufficient to mandate a new trial in light of the other competent evidence presented by plaintiff to rebut the presumption of Lombroia's paternity. However, as plaintiff is required to prove defendant's paternity "beyond a reasonable doubt," G.S. § 49-14, we hold that this error, when combined with the additional errors discussed below, requires that defendant be allowed a new trial.

[2] Defendant next argues that the trial court erred in allowing Roche Biomedical immunologist, Dr. Lloyd Osborne, to testify as to the results of paternity blood testing of Thomas Lombroia which had been performed by another Roche Biomedical physician working in the state of Florida wherein Mr. Lombroia resides. Again, plaintiff offered the results of this testing to rebut the presumption of Lombroia's paternity. Defendant argues that plaintiff failed to establish a proper foundation for the admission of the results of the blood test by failing to offer proper proof that the blood tested was in fact the blood of Thomas Lombroia.

Prior to testifying regarding the results of Lombroia's blood test, Dr. Osborne was qualified by the court as an expert in the field of immunology and paternity evaluation. He testified that his knowledge of the Lombroia blood test was based upon his reading of a report prepared by the Florida physician. Dr. Osborne further stated that such reports are prepared and kept in the ordinary course of business by Roche Biomedical and that he was a custodian of the records of the company. The court allowed plain-

tiff to introduce the report into evidence and also allowed Dr. Osborne to testify concerning the contents of that document.

Plaintiff contends that this report is admissible pursuant to several of the hearsay exceptions contained within the Rules of Evidence. Hearsay rules, however, do not become an issue until the relevancy of the evidence has been established. *See* G.S. 8C-1, Rule 402. In order to establish the relevancy of blood test results, plaintiff is required to "lay a foundation . . . by way of expert testimony explaining the way the test is conducted, attesting its scientific reliability, and vouching for its correct administration in [this] particular case." *FCX, Inc. v. Caudill*, 85 N.C. App. 272, 276, 354 S.E.2d 767, 771 (1987), *citing Robinson v. Life and Casualty Insurance Co.*, 255 N.C. 669, 122 S.E.2d 801 (1961). Further, "the substance analyzed must be accurately identified . . . [by proving] a chain of custody to insure that the substance came from the source claimed and that its condition was unchanged." *Id., citing* McCormick on Evidence § 212 at 667-68 (E. Cleary 3rd ed. 1984), and Brandis on North Carolina Evidence § 117, n.2 (2d ed. 1982).

Plaintiff herein offered no witness competent to testify as to the proper administration of the blood test nor of the proper chain of possession, transportation and safekeeping of the blood sample sufficient to establish a likelihood that the blood tested was in fact blood drawn from Mr. Lombroia. *See State v. Britt*, 291 N.C. 528, 231 S.E.2d 644 (1977). Dr. Osborne was the only witness offered by plaintiff regarding this blood test and he admitted that he had no personal knowledge concerning the administration of this particular test nor any personal ability to trace a chain of custody for the sample allegedly tested. Plaintiff therefore failed to establish the relevancy of this test result. The trial court erred in allowing Dr. Osborne's testimony concerning the report and in admitting that document into evidence.

[3] Defendant further argues that the trial court committed error in allowing Dr. Osborne to testify that, in his opinion, "it's extremely likely" that defendant is the father of the minor child. Dr. Osborne should not have been allowed to state such an opinion. Our Supreme Court held in *State v. Jackson*, 320 N.C. 452, 358 S.E.2d 679 (1987), that, although it may be proper for a qualified physician to testify concerning the result of a defendant's blood test and concerning the use and application of the paternity index, it is not proper to allow the expert to state his opinion concerning paternity as

such an opinion is of no assistance to the trier of fact. The court concluded that the jury is equally capable of weighing the genetic factors along with the nongenetic circumstances to determine the ultimate probability of paternity. This Court has ruled similarly in *State ex rel. Williams v. Coppedge*, 105 N.C. App. 470, 414 S.E.2d 81 (1992).

[4] Defendant next assigns as error the trial court's failure to grant his motions for directed verdict based upon his contention that plaintiff's evidence failed to "rebut the presumption of legitimacy in favor of Thomas Lombroia." Although we are remanding this matter for a new trial based upon the reasons set forth above, we nevertheless find that plaintiff's competent evidence, which included the results of a blood test which established that defendant Peek "would be 377 times more likely to be the father of the minor child and that the probability of paternity is 99.7%," as well as testimony concerning the sexual relationship between plaintiff and defendant at the time of the child's conception and of the lack of contact between plaintiff and Thomas Lombroia at that time, was sufficient to require submission of the case to the jury. *See Wright v. Wright*, 281 N.C. 159, 188 S.E.2d 317 (1971).

[5] Finally, defendant argues that the trial court erred in ruling that Thomas Lombroia was not a necessary party to this action. Defendant contends that this order by the trial judge effectively overruled an earlier decision by another district court judge who had requested that plaintiff's counsel prepare an order for the court's signature making Lombroia a party to the proceeding. Both parties agree that the judge did not make this request while court was in session, and both parties agree that no such order was ever prepared nor executed by any judge. On the day of trial, Judge Brown ruled that "there has never been an entry of that order by the court," and further held that "Thomas Lombroia is not a necessary party to this lawsuit."

Defendant's assignment of error is without merit. Even assuming *arguendo* that the trial judge did overrule an order of another judge, which she obviously did not, defendant can show no prejudice from the ruling as it is clear that Lombroia is not a necessary party to this action. The term "necessary party" embraces all persons who have a claim or material interest in the subject matter of the controversy, which interest will be directly affected by the outcome of the litigation. G.S. § 1A-1, Rule 19(b); *Wall v. Sneed*,

13 N.C. App. 719, 187 S.E.2d 454 (1972); *Rice v. Randolph*, 96 N.C. App. 112, 384 S.E.2d 295 (1989). This litigation concerns only the paternity of defendant. Mr. Lombroia's rights and responsibilities with regard to the minor child were finally determined when the Florida court found that he was not the father of the child. The outcome of this case will not affect his interest in any way.

The entry of judgment by the trial court in accordance with the jury verdict is reversed and this matter is remanded to the District Court for a new trial.

Reversed and remanded.

Judges LEWIS and WYNN concur.