CATAWBA COUNTY, BY AND THROUGH ITS CHILD SUPPORT ENFORCEMENT AGENCY, *EX. REL.* SHANNON DEE KENWORTHY, PLAINTIFF v. NEIL KUMMAN KHATOD, DEFENDANT

No. COA95-1224

(Filed 7 January 1997)

**Evidence and Witnesses § 1457 (NCI4th)— exclusion of blood test—custody of sample—independent evidence required**

The trial court did not err in excluding blood grouping test results as evidence that plaintiff's husband was not the father of her child in an action in which plaintiff sought to prove that defendant was the father of the child where the test report did not meet the prerequisites for admission under N.C.G.S. § 8-50.1(b)(1) because the testing was not ordered by the court and the husband was not the "alleged father-defendant"; the rule of *Lombroia v. Peek,* 107 N.C. App. 745, thus applied and required independent evidence of the chain of custody; and no competent witness tes-

tified regarding the proper administration of the blood test or the proper chain of possession, transportation and safekeeping of the blood sample so as to establish the likelihood that the blood tested was in fact drawn from plaintiff's husband.

**Am Jur 2d, Evidence § 949.**

**Admissibility and weight of blood-grouping tests in disputed paternity cases. 43 ALR4th 579.**

**Admissibility or compellability of blood test to establish testee's nonpaternity for purpose of challenging testee's parental rights. 87 ALR4th 572.**

Appeal by plaintiff from judgment entered 3 May 1995 by Judge Timothy S. Kincaid in Catawba County District Court. Heard in the Court of Appeals 23 August 1996.

*Catawba County Staff Attorney Katherine R. Sumrall for plaintiff-appellant.*

*Rudisill & Brackett, P.A., by H. Kent Crowe, for defendant-appellee.*

JOHN, Judge.

Plaintiff appeals judgment for defendant in civil paternity action based upon jury determination defendant was not the father of "Baby S.," born to Shannon Kenworthy (Shannon). Plaintiff argues the trial court erred by "refusing to admit into evidence blood grouping and DNA tests performed on [Shannon's] husband." We disagree.

Pertinent background information includes the following: In June 1992, Shannon, then six months pregnant, married Christian Kenworthy (Christian). Shannon gave birth to Baby S. on 18 September 1992. Shannon and Christian separated in October 1992 and eventually divorced. Shannon subsequently applied for Medicaid benefits through the Catawba County Department of Social Services (DSS). DSS in turn contacted Christian seeking child support for Baby S.

Following interviews with Shannon and Christian conducted by DSS caseworker Cheryl Deal (Deal), paternity testing of the pair and Baby S. excluded Christian as the child's biological father. Based upon information received in the interviews, Deal contacted defendant to arrange paternity testing, the results of which indicated a

99.99% probability defendant was the biological father of Baby S. On 23 June 1994, plaintiff Catawba County Child Support Enforcement Agency initiated the instant action to establish the paternity of Baby S. and to obtain an order of child support.

At trial, Shannon admitted she had engaged in sexual intercourse with four different men following her last menstrual period prior to discovering she was pregnant. These included both defendant and Christian on 31 December 1991, at or about the time Baby S. was conceived. Shannon further indicated she "did not use any birth control" on that date during intercourse with defendant.

Deal related that she arranged for paternity testing of both defendant and Christian. Dr. Lee Tuckwiller (Dr. Tuckwiller), Associate Director of Roche Biomedical Laboratories (Roche) at Burlington, North Carolina, was qualified as an expert in the field of blood genetic marker testing, and stated he was "an official custodian" of paternity testing records kept in the ordinary course of business by Roche. Dr. Tuckwiller described tests administered to blood samples obtained from Shannon, defendant, and Baby S., and reported the results. Dr. Tuckwiller then proffered his opinion that the probability of defendant's paternity of Baby S. was 99.99%.

Plaintiff also attempted to present evidence of the testing of Shannon, Baby S., and Christian. Verified documentary evidence indicated blood specimens of the three were drawn 7 June 1993 in Conover, North Carolina, and then shipped to Roche in Burlington. No additional evidence was presented to establish the chain of custody. Following a *voir dire* hearing as to the admissibility under N.C.G.S. § 8-50.1(b1) of a report reflecting the test results, the trial court excluded the evidence.

Defendant offered no evidence. The issue of his paternity was submitted to the jury, which responded "No." Plaintiff timely entered notice of appeal.

Plaintiff's single assignment of error is directed at the trial court's refusal to admit into evidence results of the paternity testing involving Christian. In pertinent part, the version of G.S. § 8-50.1 applicable to the proceedings below provided:

> (b1) In the trial of any civil action in which the question of parentage arises, the court shall, on motion of a party, order the mother, the child, and the alleged father-defendant to submit to one or more blood or genetic marker tests, to be performed by a

duly certified physician or other expert. . . . Verified documentary evidence of the chain of custody of the blood specimens obtained pursuant to this subsection shall be competent evidence to establish the chain of custody. The testing expert's completed and certified report of the results and conclusions of the paternity blood test or genetic marker test is admissible as evidence without additional testimony by the expert if the laboratory in which the expert performed the test is accredited for parentage testing by the American Association of Blood Banks. Accreditation may be established by verified statement or reference to published sources. Any person contesting the results of a blood or genetic marker test has the right to subpoena the testing expert pursuant to the Rules of Civil Procedure. . . .

N.C.G.S. § 8-50(b1) (1993 Supp., subsequently amended by 1993 N.C. Sess. Laws ch. 733, § 1 for cases filed after 1 August 1994).

Plaintiff asserts the foregoing version of the statute was adopted in response to this Court's decision in *Lombroia v. Peek*, 107 N.C. App. 745, 421 S.E.2d 784 (1992), and that our holding in that case consequently is distinguishable. In *Lombroia*, decided under N.C.G.S § 8-50.1(b) (1979), the trial court permitted expert testimony concerning a report of an out-of-state blood grouping test notwithstanding the absence of evidence

as to the proper administration of the blood test [and] of the proper chain of possession, transportation and safekeeping of the blood sample sufficient to establish a likelihood that the blood tested was in fact blood drawn from [plaintiff's husband].

*Id.* at 749, 421 S.E.2d at 787. We concluded the trial court had erred, emphasizing that the sole witness regarding the test

admitted that he had no personal knowledge concerning the administration of this particular test nor any personal ability to trace a chain of custody for the sample allegedly tested.

*Id.*

G.S. § 8-50.1(b1) was thereafter enacted and made applicable to actions, such as that *sub judice*, filed on or after 1 October 1993. Under conditions set forth in the amended statute, verified documentary evidence became sufficient to validate the chain of custody. However, the statutory modification does not sustain plaintiff's position herein.

In the instant case, as in *Lombroia*, no competent witness testified regarding either the proper administration of the blood test involving Christian or the proper chain of possession, transportation and safekeeping of the blood sample allegedly obtained from him so as "to establish a likelihood that the blood tested was in fact drawn from [Christian]." *Id.* Accordingly, if the test report at issue did not meet the prerequisites for admission under G.S. § 8-50.1(b1), the rule of *Lombroia* requiring independent evidence of the chain of custody governs and the trial court did not err.

A condition precedent under the statute for report admissibility based upon documentary proof of chain of custody is that "the blood specimens [were] obtained pursuant to this subsection," G.S. § 8-50.1(b1), *i.e.*, ordered by the court upon "motion of a party." According to Deal's testimony, Christian "asked for paternity tests and paid for them" when contacted by plaintiff concerning child support for Baby S. Subsequent to administration of the test, plaintiff determined not "to pursue [Christian] for child support" of Baby S. As plaintiff concedes in its appellate brief, Christian thus was *not* a party to the instant action, begun well after conclusion of his test, and nothing in the record suggests the blood grouping test requested by him was "ordered" by the trial court.

In addition, the language of the statute specifically speaks to test results obtained from "the mother, the child, and the alleged *father-defendant*" in "the trial of [a] civil action in which the question of parentage arises." G.S. § 8-50.1(b1) (emphasis added). The "alleged father-defendant" in the instant action involving the parentage of Baby S. was the named defendant, Neil Khatod, *not* Christian.

Notwithstanding, plaintiff insists Christian was in any event "an alleged father" and points to subsequent language in the statute referring to test results obtained from "the alleged parent." The statute having provided for testing only of "the mother, the child, and the alleged father-defendant," the later mention of "the alleged parent" unquestionably refers to "the *alleged father-defendant*" *in the paternity action* upon whom testing has been performed pursuant to the statute. This argument of plaintiff is fatuous and we summarily reject it.

To conclude, the test report at issue did not qualify for admissibility under the relaxed evidentiary requirements of G.S. § 8-50.1(b1), and the trial court did not err by refusing to allow it into evidence.

No error.

Judges GREENE and MARTIN, Mark D., concur.