ROCKINGHAM COUNTY DEPARTMENT OF SOCIAL SERVICES, ex rel. ANNE R. SHAFFER (STOUT), Plaintiff v. TODD A. SHAFFER, Defendant 1; RONALD WAYNE HAMILTON, JR., Defendant 2

No. COA96-757

(Filed 6 May 1997)

Evidence and Witnesses § 1920 (NCI4th)—paternity blood tests—verification of chain of custody—insufficient evidence of chain of custody

In an action against defendants to establish paternity and compel support for a child whom one of the two defendants allegedly fathered, it was error for the trial court to admit defendants' blood test results into evidence where the chain of custody of the blood specimens was not verified so as to render them admissible under N.C.G.S. § 8-50.1(b1), and where there was no evidence of the chain of possession, transportation and safekeep-

ing of the blood samples so as to render them admissible pursuant to the rule set forth in *Lombroia v. Peek*, 107 N.C.App. 745.

**Am Jur 2d, Evidence § 573.**

Appeal by defendant Ronald Wayne Hamilton, Jr. from judgment filed 6 November 1995 in Rockingham County District Court by Judge Richard W. Stone. Heard in the Court of Appeals 19 March 1997.

*Office of the Rockingham County Department of Social Services, by Phyllis P. Jones, for plaintiff-appellee.*

*Max D. Ballinger for Ronald Wayne Hamilton, Jr., defendant-appellant.*

*No brief filed by defendant-appellee Todd A. Shaffer.*

GREENE, Judge.

Ronald Wayne Hamilton, Jr. (defendant) appeals a jury verdict finding that he is the father of Margaret Anne Shaffer (Margaret), the daughter of Anne R. Shaffer (plaintiff).

Margaret was born on 22 December 1989, at which time plaintiff was married to Todd Shaffer (Mr. Shaffer). Plaintiff and defendant had intercourse at approximately the time when Margaret was conceived, at which time plaintiff and Mr. Shaffer were married but not living together. Plaintiff filed an action against defendant and Mr. Shaffer to establish paternity and compel support for Margaret and for reimbursement of welfare funds.

To establish Margaret's paternity, plaintiff, defendant, Margaret and Mr. Shaffer submitted to blood testing. Dr. Charles Kelly, a "parentage" director and a DNA testing laboratory director at Genetic Design, Inc. (Genetic), testified (over the objection of the defendant that there had been no showing of a proper chain of custody of the blood specimens) that based on the results of the blood tests the defendant could not be excluded from paternity, and the probability that defendant was Margaret's father is 99.99 percent. The blood tests of Mr. Shaffer showed that he did "not share any genetic markers in common with" Margaret and the probability that he was Margaret's father was "zero percent." In giving his opinion Dr. Kelly relied on "Paternity Evaluation Report[s]," showing the genetic testing results of tests performed by Genetic, and "Client Authorization[s]" showing

ROCKINGHAM COUNTY DSS ex rel. SHAFFER v. SHAFFER

[126 N.C. App. 197 (1997)]

that the blood tested had been drawn from the parties, packaged, sealed and received unopened by Genetic.

The Client Authorizations show that a phlebotomist *certified* that blood was drawn from the persons shown on the reports (the parties to this action). The phlebotomist also signed her name indicating that she had packaged the specimens and forwarded them to Genetic. The Client Authorizations further reveal a certification by Genetic that it received the specimens and "there [was] no evidence that the package[s] [had] been opened or tampered with." The Client Authorizations contained no verifications. The Paternity Evaluation Reports did contain a statement, "sworn on oath," that the results were "true and correct." Over defendant's objections both the Client Authorizations and the Paternity Evaluation Reports were admitted into evidence.

---

The dispositive issue is whether a proper chain of custody was established to admit the blood tests and allow Dr. Kelly to express an opinion on Margaret's paternity based upon those blood tests.

Defendant contends that it was prejudicial error for the trial court to admit his and Mr. Shaffer's blood test results because the chain of custody was not properly established. We agree.

Section 8-50.1(b1) provided that:

> *Verified* documentary evidence of the chain of custody of the blood specimens obtained pursuant to this subsection shall be competent evidence to establish the chain of custody. The testing expert's completed and *certified* report of the results and conclusions of the paternity blood test or genetic marker test is admissible as evidence without additional testimony by the expert if the laboratory in which the expert performed the test is accredited for parentage testing by the American Association of Blood Banks.

N.C.G.S. § 8-50.1(b1) (1993) (emphasis added), *amended by* § 8-50.1(b1) (Supp. 1996).

To "verify" is to "affirm formally or under oath." *The American Heritage Dictionary* 1343 (2d ed. 1982). Verification by affidavit requires that the verification be "sworn to before a notary public or other officer of the court authorized to administer oaths." 1 G. Gray Wilson, *North Carolina Civil Procedure* § 11-7, at 196 (2d ed. 1995).

ROCKINGHAM COUNTY DSS ex rel. SHAFFER v. SHAFFER

[126 N.C. App. 197 (1997)]

To "certify" is to "confirm formally as true, accurate, or genuine." *The American Heritage Dictionary* 255.

In this case there is no evidence that the chain of custody of the blood tests relied on by Dr. Kelly were *verified* as required by section 8-50.1(b1). The forms do not reveal any affirmations or oaths. Although the chain of custody was *certified*, that is not sufficient compliance with the statute.[1] Although we are unable to understand why the legislature would require verification of the chain of custody of blood specimens when determining parentage, and only require certification as to the paternity evaluation report itself, the language of the statute is clear and unambiguous in requiring more than mere certification to establish a chain of custody and it is not for this Court, "under the guise of construction," to alter the clear language. *Utilities Comm'n v. Edmisten, Attorney Gen.*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977). Thus, section 8-50.1(b1) cannot be relied upon to establish the chain of custody of the blood specimens.

"[I]f the test report at issue [does] not meet the prerequisites for admission under G.S. § 8-50.1(b1), the rule of *Lombroia* requiring independent evidence of the chain of custody governs." *Catawba County v. Khatod*, 125 N.C. App. 131, 135, 479 S.E.2d 270, 272 (1997). *Lombroia v. Peek*, 107 N.C. App. 745, 421 S.E.2d 784 (1992), requires that the blood tests be accurately identified by proving a chain of custody to insure "that the substance came from the source claimed and that its condition was unchanged." *Id*. at 749, 421, S.E. 2d at 786. This requirement can be met through competent evidence regarding the "chain of possession, transportation and safekeeping of the blood sample sufficient to establish a likelihood that the blood tested was in fact blood drawn" from the alleged parent. *Id*.

No witness testified to the proper chain of possession, transportation and safekeeping of the blood samples "sufficient to establish a likelihood that the blood tested was in fact blood drawn from" defendant. *Lombroia*, 107 N.C. App. at 749, 421 S.E.2d at 786. Dr. Kelly had no personal knowledge concerning the drawing of the blood or the chain of custody of the blood samples and was only able to testify to such events from the unverified chain of custody reports. *See id*. (trial court erred in admitting blood test in paternity action where only evidence as to proper chain of custody was expert wit-

---

1. It is interesting to note that the "Paternity Evaluation Report[s]" were verified and the statute only requires that these reports be certified. This error, however, is not prejudicial as the requirements of the statute were exceeded.

ness who "had no personal knowledge" concerning the test). Plaintiff therefore failed to establish the relevancy of the blood test results under either section 8-50.1(b1) or *Lombroia* and it was therefore error to admit the blood tests and allow Dr. Kelly to express an opinion based on the blood test results.

We do not address the plaintiff's remaining assignments of error. The entry of judgment by the trial court in accordance with the jury verdict is reversed and this matter is remanded to the trial court for a new trial.

New Trial.

Judges WALKER and McGEE concur.