COLUMBUS COUNTY, ON BEHALF OF KATIE BROOKS, PLAINTIFF v. MARION A. DAVIS, DEFENDANT

No. COA02-1569

(Filed 17 February 2004)

**Evidence— DNA test—chain of custody—insufficient**

The chain of custody for DNA samples for a DNA test that was not court-ordered was not complete, a proper foundation was not established for the test results, and a paternity judgment was remanded for a new trial.

Appeal by defendant from judgment entered 10 May 2002 by Judge Napoleon B. Barefoot, Jr. in Columbus County District Court. Heard in the Court of Appeals 12 November 2003.

*James R. Caviness, attorney for plaintiff.*

*William L. Davis, III, attorney for defendant.*

TIMMONS-GOODSON, Judge.

Marion A. Davis ("defendant") appeals a civil judgment declaring him to be the father of the minor child, Daquadrin Lawson. For the reasons stated herein we vacate the judgment of the trial court and remand this case for a new trial.

COLUMBUS CTY. EX REL. BROOKS v. DAVIS

[163 N.C. App. 64 (2004)]

The evidence presented at trial tends to show the following: Defendant and Monica Louise Forbes ("Forbes") had a sexual relationship between April and June, 1991. In February or March of that year, Forbes had one sexual encounter with Arthur Pierre Frink ("Frink"), who is defendant's second cousin. Soon after her relationship with defendant ended, Forbes began dating and living with Arthur Lawson ("Lawson").

On 7 December 1991, Forbes gave birth to Daquadrin E'Maud Forbes Lawson ("Daquadrin"). Lawson believed that Daquadrin was his son, and Forbes did not tell him the truth. Forbes and Daquadrin lived with Lawson until 1994 when Forbes told Lawson that Daquadrin was not his son. Four months after the relationship between Forbes and Lawson ended, Lawson reported to the Columbus County Department of Social Services ("DSS") that Forbes was an "unfit mother." Forbes's mother, Katie Louise Hamilton ("Hamilton"), was subsequently given custody of Daquadrin. Hamilton applied for and received public assistance funds to assist in supporting Daquadrin.

In 1998, Forbes signed an affidavit of parentage at the request of DSS identifying defendant as Daquadrin's father. A paternity test was performed, which concluded that the probability that defendant fathered Daquadrin was 99.62 percent.[1] DSS subsequently filed a complaint against defendant seeking adjudication of Daquadrin's paternity, continuing support and maintenance for the child, and reimbursement of public assistance payments expended.

Over defendant's objection at trial, Dr. Gary Stuhlmiller ("Dr. Stuhlmiller"), director of the Department of Paternity Testing of Laboratory Corporation of America, testified that based on the deoxyribonucleic acid ("DNA") test results the defendant could not be excluded from paternity, and that there was a 99.62 percent probability that defendant was Daquadrin's father. By his objection, defendant took issue with whether there had been a proper showing of the chain of custody for the blood specimens. In offering his opinion, Dr. Stuhlmiller relied on the following exhibits:

Exhibit 1—Client Authorization form for blood sample collection and testing for paternity evaluation for Daquadrin and defendant.

---

1. The record on appeal fails to establish that the paternity test was ordered by the court. N.C.R. App. P. 9(1)(d) (2004) mandates that the record on appeal in civil cases contain "copies of the pleadings, and of any pre-trial order on which the case or any part thereof was tried." Therefore, for the purpose of our analysis, we deem the test not to have been court-ordered.

Exhibit 2—Client Authorization form for blood sample collection and testing for paternity evaluation for Forbes.

Exhibit 3—Affidavits of Receipt of Genetic Specimens Chain of Custody for Daquadrin and defendant.

Exhibit 4—Affidavits of Receipt of Genetic Specimens Chain of Custody for Forbes.

Exhibit 5—Chain of Custody Verification for collected and packaged specimens for Daquadrin and defendant.

Exhibit 6—DNA test results.

Over defendant's objections all of these documents were admitted into evidence.

The jury returned a unanimous verdict adjudging defendant to be Daquadrin's father. The trial court entered a judgment in accordance with this verdict. It is from this judgment that defendant appeals.

---

Defendant assigns error to the trial court (I) admitting plaintiff's Exhibits 1-6 relating to the DNA testing procedure into evidence; (II) admitting opinion testimony by an expert witness regarding Exhibits 1-6; (III) admitting into evidence the DNA test results; and (IV) denying defendant's motions for directed verdict and judgment not withstanding the jury verdict.

The dispositive issue on appeal is whether a proper chain of custody was established to admit the DNA test results. Both parties assert that the DNA test was not court-ordered, and that *Lombroia v. Peek*, 107 N.C. App. 745, 421 S.E.2d 784 (1992), is the controlling authority. Plaintiff argues that it "met the requirements of *Lombroia* in laying the foundation for admission of Exhibits No. 1-6." Defendant argues that under *Lombroia*, "[i]t was error to admit these exhibits without requiring testimony from the people involved in the collection of the sample and who performed these tests." We agree with defendant.

In instances in which the court orders DNA testing, N.C. Gen. Stat. § 8-50.1(b1) provides a less formal procedure for admitting DNA test results into evidence. The statute in pertinent part provides as follows:

Verified documentary evidence of the chain of custody of the blood specimens obtained pursuant to this subsection shall be

COLUMBUS CTY. ex rel. BROOKS v. DAVIS

[163 N.C. App. 64 (2004)]

competent evidence to establish the chain of custody. Any party objecting to or contesting the procedures or results of the blood or genetic marker tests shall file with the court written objections setting forth the basis for the objections and shall serve copies thereof upon all other parties not less than 10 days prior to any hearing at which the results may be introduced into evidence. . . . *If no objections are filed within the time and manner prescribed, the test results are admissible as evidence of paternity without the need for foundation testimony or other proof of authenticity or accuracy.*

N.C. Gen. Stat. § 8-50.1(b1) (2003) (emphasis added). If the blood test is not ordered by the trial court upon motion by a party, the standard in N.C. Gen. Stat. § 8-50.1(b1) will not apply and the party seeking to admit the test must present independent evidence of the chain of custody. *See Catawba County ex rel. Kenworthy v. Khatod*, 125 N.C. App. 131, 135, 479 S.E.2d 270, 272 (1997) ("[I]f the test report at issue did not meet the prerequisites for admission under G.S. § 8-50.1(b1), the rule of *Lombroia* requiring independent evidence of the chain of custody governs . . . .").

In *Lombroia* this Court held that

[i]n order to establish the relevancy of blood test results, plaintiff is required to 'lay a foundation . . . by way of expert testimony explaining the way the test is conducted, attesting its scientific reliability, and vouching for its correct administration in [this] particular case.' . . . '[T]he substance analyzed must be accurately identified . . . [by proving] a chain of custody to insure that the substance came from the source claimed and that its condition was unchanged.'

107 N.C. App. at 749, 421 S.E.2d at 786, *quoting FCX, Inc. v. Caudill*, 85 N.C. App. 272, 276, 354 S.E.2d 767, 771 (1987).

We also look to *Rockingham County DSS ex rel. Shaffer v. Shaffer* which presents facts similar to the case at bar. In *Shaffer* the expert witness based his testimony "on 'Paternity Evaluation Reports,' showing the genetic testing results of tests performed by [the laboratory], and 'Client Authorizations' showing that the blood tested had been drawn from the parties, packaged, sealed and received unopened by [the laboratory]." 126 N.C. App. 197, 198-99, 484 S.E.2d 415, 416 (1997). Because the doctor had neither drawn the blood nor had any personal knowledge of the blood sample's chain of custody, this Court held that

> [p]laintiff therefore failed to establish the relevancy of the blood test results under either section 8-50.1(b1) or *Lombroia* and it was therefore error to admit the blood tests and allow [the doctor] to express an opinion based on the blood test results.

*Shaffer*, 126 N.C. App. at 201, 484 S.E.2d at 417, *see also Lombroia*, 107 N.C. App. at 749, 421 S.E.2d at 787. The chain of custody can be established by sworn affidavits, *see Shaffer*, 126 N.C. App. at 199, 484 S.E.2d at 416-17, or witness testimony from the people involved in the various stages of specimen collection and handling. *Lombroia*, 107 N.C. App. at 749, 421 S.E.2d at 786.

In this case as in *Shaffer*, the expert witness had no personal knowledge of the DNA sample collections or the samples' chain of custody. Thus, to establish a foundation for the DNA test results' admissibility, plaintiff was required to present affidavits or witness testimony for each link in the chain of custody for each DNA sample.

To lay the foundation for Forbes's DNA sample, plaintiff presented witness testimony from the person who collected, sealed and mailed the sample to the laboratory. Plaintiff also presented an affidavit by the person who received the specimen at the laboratory for testing stating that the specimen did not appear to have been tampered with. We do not consider this to be sufficient evidence to establish the chain of custody. In addition to these two affidavits, plaintiff should have also provided testimony or an affidavit from the individual who performed the DNA test to confirm that the specimen was transferred within the laboratory without being disturbed. *Cf. State v. Britt*, 291 N.C. 528, 533, 231 S.E.2d 644, 648 (1977), *quoting Joyner v. Utterback*, 196 Iowa 1040, 195 N.W. 594 (1923) ("It is generally held that the party offering such specimen is required to establish, at least as far as practicable, a complete chain of evidence, tracing possession from the time the specimen is taken from the human body to the final custodian by whom it is analyzed.") Thus, we conclude that the chain of custody was not properly established for Forbes's DNA sample.

We are also not satisfied with the foundation for the DNA samples belonging to Daquadrin and defendant. The only evidence that samples were taken from defendant and Daquadrin is the client authorization form. However, this form is not verified as an affidavit. Additionally, plaintiff did not present testimony from the person who collected these samples. Plaintiff provided two affidavits that the

samples were received by the laboratory and did not appear to have been tampered with, but this evidence is not sufficient to establish an entire chain of custody. Therefore, Dr. Stuhlmiller's testimony regarding the chain of custody of the sample of defendant and Daquadrin is unverified and should not have been admitted into evidence by the trial court.

Because the chain of custody for the DNA samples was not complete, we conclude that a proper foundation was not established for the admission of the DNA test results. Thus, the trial court improperly admitted the test results. Therefore, we vacate the underlying judgment and remand this case for a new trial. Accordingly, it is not necessary to address defendant's remaining assignments of error.

Vacated and remanded.

Judges WYNN and ELMORE concur.